# LALONE *v.* UNITED STATES.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF WISCONSIN.

No. 4. Submitted October 13, 1896. — Decided November 30, 1896.

The rule that in all proceedings instituted to recover moneys or to set aside and annul deeds or contracts or other written instruments on the ground of alleged fraud practised by a defendant upon a plaintiff, the evidence tending to prove the fraud and upon which to found a verdict or decree must be clear and satisfactory extends to cases of alleged fraudulent representations, on the faith of which an officer of the government has done an official act upon which rights of the party making the representations may be founded; and in this case the evidence on the part of the plaintiff, when read in connection with that which was given on the part of the defendants, falls far short of the requirements of the rule.

THE case is stated in the opinion.

*Mr. A. T. Britton* and *Mr. A. B. Browne* for appellants.

*Mr. Solicitor General* for appellees.

MR. JUSTICE PECKHAM delivered the opinion of the court.

This is a suit in equity, brought by the United States to recover back certain moneys which had theretofore been paid the appellant, Joseph Lalone, upon the granting of his application for a pension, and to enjoin the defendant, the First National Bank of Beaver Dam, Wisconsin, from paying out certain moneys deposited therein by the appellant, Margaret Lalone, the wife of Joseph, and which moneys were alleged to be part of those paid to Joseph, and to enjoin the conveyance of certain real estate, the legal title to which was vested in the defendant, Margaret Lalone, and which plaintiff alleged to have been purchased by her with a portion of such moneys, and to vest the title to such moneys and real estate in the United States.

The ground upon which a recovery of the moneys was sought was that the pension had been obtained through the fraudulent acts and representations of the individual defendants. The bill alleged that the defendant, Joseph Lalone, filed with the pension bureau, on the 19th of May, 1880, a claim for a pension on account of partial paralysis due to disease and sickness contracted while serving in the army during 1865 ; that after the consideration of such claim for a period of eight years, and until April 21, 1888, the application was allowed, and more than $5000 were paid to the applicant as arrearages of pension, and the sum of $30 per month thereafter was allowed. The bill then alleged that the partial paralysis which Lalone claimed he was suffering from and which he said resulted from the disease and sickness contracted while in such army service was not the result of any such cause, and that Lalone's allegation to that effect was false and fraudulent, and intended to deceive the officers charged with the duty of examining and allowing such claim, and that it did so deceive them ; that claimant's disability

was caused by and resulted from an accident suffered by him long subsequent to his discharge from the army; that Lalone had turned the pension moneys received from the government over to his wife, Margaret Lalone, who had deposited $5000 thereof in her name in the First National Bank of Beaver Dam, Wisconsin, and had thereafter withdrawn all but about $1500 thereof, and with it had purchased 120 acres of land in Dodge County, Wisconsin, subject to an existing mortgage of $1300; that Margaret Lalone had knowledge of and was a party to the fraud alleged. The bill asked for a decree giving the United States the residue of the fund in the bank and a conveyance of the realty and for an injunction *pendente. lite.*. Upon the filing of the bill an injunction was issued. The individual defendants each answered under oath denying all the charges of fraud made by the bill. The bank admitted its possession of $1500 deposited by Margaret Lalone.

On the testimony submitted, which consisted of the depositions of many witnesses, the Circuit Court rendered a final decree in favor of the United States against the individual defendants for a recovery of the amount of money received by them from such pension fund with interest; the decree also provided that the bank should pay the $1500 on deposit with it into the United States Treasury; it also ordered the sale of the realty, and that the proceeds of the sale should be applied to the payment of the money decree against the Lalones, with execution for any deficiency.

. The case is now before us for review. In all proceedings instituted to recover moneys or to set aside and annul deeds or contracts or other written instruments on the ground of alleged fraud practised by a defendant upon a plaintiff, the rule is of long standing and is of universal application, that the evidence tending to prove the fraud and upon which to found a verdict or decree must be clear and satisfactory. It may be circumstantial but it must be persuasive. A mere preponderance of evidence which at the same time is vague or ambiguous is not sufficient to warrant a finding of fraud, and will not sustain a judgment based on such finding. The rule obtains in cases of alleged fraudulent representations made to

an officer of the government upon the faith of which the officer has issued a patent or done any other official act upon which the rights of the party making the misrepresentations may be founded. This principle is exemplified in *United States v. Iron Silver Mining Co.*, 128 U. S. 673, and cases cited, and is not confined to cases of patents for lands.

Examining the record in this case and after perusing the whole evidence contained therein, and having in mind the rule above stated, we are entirely convinced that the evidence on the part of the plaintiff when read in connection with that which was given on the part of the defendants, falls far short of the requirements of the rule.

There are some facts which are established by uncontradicted evidence in the case. Joseph Lalone, one of the defendants and the individual to whom the pension was granted, was, at the time of his enlistment, a young man of about thirty-two years of age, of French extraction, and living in the State of Wisconsin. In 1864 he enlisted as a private in one of the Wisconsin regiments. He was famed at that time among his townsmen for his physical strength and perfect health. As many of the witnesses expressed it, he was one of the healthiest men they ever saw. He was with his regiment in the Army of Virginia, and during the winter and spring of 1865 he contracted a disease and was in the hospital at Alexandria in Virginia, suffering from what was thought to be dumb ague, or fever and ague, as stated by some of the witnesses. He came back to his home in Wisconsin, after his discharge in August, 1865, badly shattered in health, sickly in appearance, and to such an extent as scarcely to be recognized by some of his former friends. His complexion and color were bad. He seemed to have no strength in his legs, walked in a trembling way, and seemed unable to do any hard work. (There is some difference of opinion among the witnesses as to the extent of his sickness when he came from the army.) Some time in the spring or early summer of 1866 or 1867 he suffered from a stroke of paralysis, resulting in the almost complete loss of the use of one side of his body, and affecting his speech and to some extent his mind. From that time

until the time of the trial of this case he has suffered without intermission and with scarcely any improvement. In making his application for a pension in 1880 he claimed that this paralysis was the result of his experience in the army and of his exposure incident to army life and of the disease he there contracted. So far the evidence is substantially uncontradicted. There is, however, a conflict in regard to the immediate cause of the paralysis. Two witnesses upon the part of the government, who were boys at the time of the alleged occurrence, testified that they saw the defendant thrown from his wagon while driving along the road, and it is claimed that immediately or soon thereafter the paralysis appeared. It is claimed that the evidence on the part of the government shows that before this accident he had exhibited no signs of any paralysis, and that he had been fairly capable from the time of his return from the army up to the time of the accident to attend to the work on his farm like any other man of his age. Other witnesses for the government testified to the general speech of people at that time that Lalone had been thrown from his wagon and had received severe injuries, resulting in paralysis, from which he never recovered. On the other hand, the individual defendants denied the occurrence of any such alleged accident, contradicted the evidence of the government's witnesses as to its happening, and gave evidence tending to show that soon after his return from the army Lalone suffered a slight paralytic stroke, and that he was unable to do the ordinary work of the farm from the time of his return, and that in the spring of 1866 he sustained the last stroke, from the effects of which he never recovered, and was then suffering.

Upon a careful perusal of the evidence we think it clearly appears that Lalone was not able to work on his farm from the time of his return as he had been accustomed to work before his departure for the army. Many years have elapsed since those events, and it is not strange that witnesses differ somewhat as to Lalone's condition when he returned, or as to the first appearance of the paralysis with which he is unquestionably afflicted, and under which he has suffered and been

almost helpless for nearly thirty years. Whether it was the direct result of his army life and the disease there contracted, or the direct and immediate result of the alleged accident, seems to be the chief subject of conflict in the evidence of the witnesses.

It is unnecessary and it would serve no good purpose for us on this occasion to go into an extended and minute review of the evidence given on both sides of this case. It has been read with great care, and the most that can be said is that after a careful perusal of all of it there are some circumstances shown which might raise a doubt as to whether the last stroke of paralysis did not occur immediately or soon after the alleged accident. We are not entirely satisfied from the evidence that the accident in truth occurred in the manner and to the extent as testified to by the witnesses who spoke in regard to it, and who were quite young boys at the time they alleged that it happened, which was almost thirty years before the time they testified. But even if we were satisfied from the evidence that the accident took place as described by these witnesses, we should still feel that the case on the part of the government had not been made out with that clearness which is requisite in order to base a finding of fraud. It is not and cannot be disputed that Lalone went to the army a healthy man and came back very greatly altered and to all appearance a very sick man. It is uncontradicted that while in the army he suffered from some very grave and enervating fever, and that he was treated for it in the hospital at Alexandria. The medical witnesses called on the part of the government themselves admit that paralysis might supervene more readily in the case of one who had materially suffered from some disease and who had not recovered from its effects, such as fever and ague, than it might in the case of a healthy man, or, as one of them said, "just to the extent that his vital forces were depressed by the disease under which he suffered he would be just that much less able to withstand sickness or injury, and that, therefore, an injury which might not have resulted with a perfectly well person in such injury to the brain as to cause paralysis might be followed

with such result more readily in the case of a man who had suffered from a previous illness and was still laboring under its depressing effects." In the latter case, while the blow or accident might be the direct, immediate cause of the paralysis; yet the prior physical condition of the subject caused by ill-health and exposure in the army and the sickness which he endured while in the hospital in Virginia from which he was then suffering, might fairly be regarded as a concurring cause of such paralysis. It could not be said to be a fraud, at any rate, under such a state of facts for the defendant to claim that his paralysis was caused by his sickness in the army.

It may be somewhat doubtful as to what was the immediate cause of the paralysis from which the defendant suffered and from which he is now suffering and probably will suffer to the end. That he is almost completely helpless and has been all these years is not doubted. The trial court in the opinion delivered by it only went so far as to say that on the whole it was satisfied that the government had a preponderance of evidence that the pension was obtained fraudulently and that the money paid on it should be recovered back. This mere preponderance, as we have seen, is not sufficient in such a case. The decree in favor of the government must, therefore, be

*Reversed, and the case remanded to the Circuit Court with directions to dismiss the bill.*