**LANGSENKAMP et ux. v. BROSCALSA CHEMICAL CO. et al.**

District Court, S. D. Ohio, E. D.    July 27, 1927.

No. 332.

**1. Courts ⊕376—State statute excluding testimony of transactions with decedent is binding on federal courts.**

State statutory rule, excluding evidence of transactions with a decedent, whose administrator is a party, is binding on federal courts.

**2. Corporations ⊕472—Evidence held not to authorize cancellation of contract of sale of corporate bonds for fraud.**

Evidence *held* insufficient to warrant cancellation of contract for sale of bonds of corporation for fraudulent representations.

**3. Contracts ⊕2—Place where contract is made, not place of performance, determines validity.**

Validity of contract is determined by law of place where made, though to be performed elsewhere.

**4. Bills and notes ⊕341—Manager and director held not innocent purchaser of notes given for purchase of corporate bonds.**

Manager and director of corporation *held* not an innocent purchaser of notes given for purchase of bonds from the corporation.

**5. Licenses ⊕39—Contract for sale of bonds, in violation of Blue Sky Law of state where made, held voidable at suit of party (Acts Ind. 1920, c. 26, as amended by Acts Ind. 1921, c. 102).**

A contract for sale of bonds of a corporation *held* subject to cancellation at suit of the

purchaser, where it was made in Indiana, in violation of the Blue Sky Law of that state (Acts Ind. 1920, c. 26, as amended by Acts Ind. 1921, c. 102), which makes such contracts void.

In Equity. Suit by William Langsenkamp and wife against the Broscalsa Chemical Company and others. Decree for complainants.

Matson, Carter, Ross & McCord, of Indianapolis, Ind., and Hedges, Hoover & Tingley, of Columbus, Ohio, for plaintiffs.

Hogan & Hogan and Joseph McGhee, all of Columbus, Ohio, for defendants.

HOUGH, District Judge. The plaintiff William Langsenkamp, who since the filing of the complaint died, and whose legal representative has been substituted as a party plaintiff, and Ida Langsenkamp, who was the wife of the deceased, were residents of the state of Indiana, and brought the suit for the purpose of setting aside and declaring void the sale of bonds of the defendant Broscalsa Chemical Company, in the amount of $54,000.

The defendant Broscalsa Chemical Company is a foreign corporation, with its principal place of business in this district, and is a manufacturing company. The Industrial Utilities Foundation, Inc., is a foreign corporation, with its principal place of business in this district, and is a brokerage and security selling agency. The defendant Frank C. Tomlinson is a resident of this district, was a stockholder of the Broscalsa Chemical Company in the fall of 1923, when he became a director of the company, and was designated as chairman of the board of directors and financial manager of the company. The defendant James J. McNamara was a security salesman, and employed by and an agent of the Industrial Utilities Foundation, Inc.

In 1923 the Broscalsa Chemical Company, being in need of more capital for the conduct of its business and having debts that were pressing, some of which were in favor of stockholders and directors of the company, arranged for a mortgage bond issue, and prepared to market such issue. The defendant the Industrial Utilities Foundation, Inc., by an arrangement with the defendant Broscalsa Chemical Company, undertook the marketing of the bond issue.

In the fall of 1923 and the early part of January, 1924, through letters written by Tomlinson, chairman of the board and financial manager, and Holmes, president of the Broscalsa Chemical Company, future plans of the Broscalsa Chemical Company were announced and outlined to the stockholders of that company, including the plaintiff Langsenkamp, explaining the reorganization, the organization of a subsidiary oil company, the offering of its stock for sale to the stockholders of the Broscalsa Chemical Company, and the offer of its stock as a bonus to the purchasers of the Broscalsa Chemical Company bonds, the contemplated sale of a part of the authorized bond issue, and the arrangements made with the Industrial Utilities Foundation, Inc., for the sale of the stock and bonds.

Early in January of 1924, a group of citizens of the state of Indiana, who were stockholders, including the plaintiff Langsenkamp, attended the annual stockholders' meeting of the Broscalsa Chemical Company at its place of business, where detailed statements concerning the company's condition were made, including its plan of future expansion, its financial condition, its need for additional capitalization, and the method proposed to accomplish this by the sale of its mortgage bonds, with the bonus oil stock added as an inducement.

After this meeting, and before his return home, Langsenkamp and others paid a visit to the office of the defendant the Industrial Utilities Foundation, Inc., conferred with that company's president, let it be known that he was interested and was a prospective purchaser of the bond issue, and it was there arranged that the salesman, Mr. McNamara, defendant, should shortly come to the state of Indiana for the purpose of effecting sales of the bonds to Langsenkamp and others, who were and might become interested. A few days thereafter, McNamara went to Indianapolis, a meeting of Indiana stockholders was called by one of them, at which the Broscalsa Chemical Company's affairs were discussed, its pressing need for additional capital explained, selling talk indulged in, and generally a campaign begun for the sale of the bonds of the Broscalsa Chemical Company. During the ensuing days numerous contacts were made, and sales attempted, a number of which were successful, including the sale to the plaintiffs Langsenkamp.

The negotiations at Indianapolis, Ind., in so far as concerned the plaintiffs, and as disclosed by the record, resulted as follows: The payment by Langsenkamp to McNamara, for the Industrial Utilities Foundation, Inc., on or about the 19th of January, 1924, of the sum of $4,000, plus some additional interest accrual, evidenced by checks and receipts, and the delivery by McNamara to Langsenkamp

of bonds of the Broscalsa Chemical Company in $100 and $500 denominations, aggregating $4,000, and a stock certificate, delivered at that time or later, of the Pennsylvania Berea Company, the subsidiary company, calling for 10 shares of the capital stock, and the further delivery to McNamara by Langsenkamp of five promissory notes, dated Indianapolis, Ind., January 17, 1924, due on or before one, two, three, four, and five years, respectively; the first of the series for $10,426.90, and the remaining four for $10,000 each, signed by the plaintiffs William Langsenkamp and Mrs. Ida Langsenkamp, reading, "We jointly and severally promise to pay." The name of the payee and the place of payment were left blank in all the notes. The notes provided further for the pledging and delivering with the notes of personal property as collateral, and after this provision in the notes there was left a blank space for the purpose of later writing in the description of said collateral. There was also at that time and place delivered to McNamara by Langsenkamp an attached memorandum, also referred to in the body of the notes, listing and describing the collateral. In the memorandum of collateral, among other securities listed, appeared $50,000 in bonds of the Broscalsa Chemical Company, and 500 shares of stock of the Pennsylvania Berea Company (when issued), which was the identical consideration and the bonus, in payment of which the series of notes was given. The bonds aggregating $4,000 face value, and the certificate for the 10 shares of the Pennsylvania Berea Company stock were tendered by the plaintiffs to the defendants in open court at the opening of the trial of the case.

The defendant Tomlinson, at the time, or about the time, he had been elected a director of the defendant Broscalsa Chemical Company, and by the board of directors had been designated chairman of the board and financial manager, had loaned the Broscalsa Chemical Company the sum of $50,000 upon the company's promissory note, indorsed by several of the directors of the company, and for which he held collateral in the Broscalsa Chemical Company's bonds amounting to $100,000 face value. The note was due some time the fore part of March, 1924. The series of notes above mentioned, together with the collateral delivered to McNamara, were delivered by McNamara to the defendant Tomlinson, and $50,000 face value Broscalsa Chemical Company bonds were placed in the hands of Tomlinson as a part of the collateral securing the notes. Tomlinson's name was filled in as payee in each of the notes, and the Guarantee Trust Company, 140 Broadway, New York City, was written in the notes as the place of payment.

It is admitted in the pleadings and was conceded at the trial that a regulatory act of the state of Indiana (Acts 1920, c. 26, as amended by Acts 1921, c. 102) makes it necessary for the issuer and dealer in stocks, bonds, etc., before selling or offering to sell them in that state, to conform to the various regulations pertaining thereto, and as provided in such act, and upon failure to comply therewith it is provided that every sale or contract of sale, made or executed in violation of any provision of the act, shall be void. Not only the existence of the act is admitted, but also it is further admitted that neither the Broscalsa Chemical Company, the Industrial Utilities Foundation, Inc., nor McNamara as the salesman or agent of the latter company, in any way qualified under the terms and provisions of the act.

The plaintiffs contend that the $54,000 sale of bonds should be invalidated and nullified, for the reasons, first, that the consideration obtained for the bonds was obtained by false representations, that is to say, that the plaintiffs were willing to buy the bonds, for the purpose, among other things, of assisting in providing additional funds and capital for the operation of the chemical company, and that the false representation came about because their property was diverted to the satisfaction of already existing debts, rather than being made available to enhance the company treasury; and, second, it is their contention that the sale of the bonds to them, and the payment of the purchase price therefor, evidenced a contract made between plaintiffs and defendants' agent in the city of Indianapolis, Ind., and by reason of this the sale contract was an Indiana contract, coming directly under the regulatory provisions of the Indiana so-called Blue Sky Law.

[1] The trial of the case was more or less unsatisfactory to both parties and to the court, for the reason that a great deal of the evidence dealing with the transactions representing the acts and conversations of the parties, and otherwise competent, was ruled to be incompetent under the exclusion rule applied to parties to the suit; the opposite party being the administratrix of a deceased person. Section 11495, General Code of Ohio. The reason for the rule is apparent, and its application is salutary. It closes the door which would no doubt otherwise furnish a tempting basis for fraud. Its application, on the other

hand and under some circumstances, closes the mouths of witnesses who could, and no doubt would, honestly bring to light facts which would simply and correctly solve given problems. The rule, although applied with reason, has been studiously upheld by the Supreme Court of Ohio. Keyes v. Gore, 42 Ohio St. 211; Baker v. Jerome, 50 Ohio St. 682, 35 N. E. 1113; Farley, Executor, v. Lisey, Executrix, 55 Ohio St. 627, 45 N. E. 1103; Loney v. Walkey, Adm'r, 102 Ohio St. 18, 130 N. E. 158. This state rule is governing upon the federal courts sitting in the state. R. S. U. S. § 858 (28 USCA § 631 [Comp. St. § 1464]); Murray v. Third National Bank of St. Louis, 234 F. 481; Central Iron & Coal Co. v. Hamacher (C. C. A.) 248 F. 50.

[2] The first of plaintiff's claims has not been sustained by the evidence. What the evidence would have shown on the subject of misrepresentation by act, deed, statement, or circumstance, had not the evidential rule of exclusion intervened, is altogether conjectural and beside the point. Two outstanding circumstances did appear, however; but they appear in opposition to one another. The first is strongly favorable to the plaintiffs, and the second equally in favor of the defendants. It would not seem plausible that Langsenkamp would feel inclined to buy heavily of the bonds of the defendant company for the purpose of canceling an existing debt of the company not yet due. Neither does it appear that he proposed to buy or did buy other than the bonds generally of the defendant chemical company. By no fair construction is it shown that he contemplated buying or did buy any particular block of the bonds, or bonds in the custody of any particular person, under a special deposit as collateral. The fact, however, that he executed the notes at Indianapolis, and permitted his wife to do likewise, with the identity of the payee undisclosed, and the place of payment unknown, has the effect of neutralizing the effect of the reasonable construction that might be placed on the former circumstance. Upon this contention of plaintiffs it seems unnecessary to say more than that it does not appear with that clarity and convincing force necessary in such cases to prove fraud and fraudulent misrepresentation. U. S. v. Mammoth Oil Co. (C. C. A.) 14 F.(2d) 705, 717; Lalone v. U. S., 164 U. S. 255, 257, 17 S. Ct. Rep. 74, 41 L. Ed. 425.

[3] Turning, then, to the other question, and to the inquiry as to whether the failure to comply with the provisions of the Blue Sky Law of Indiana render the sale void, this will depend first upon the establishment of the fact that the contract for the sale was made in the state of Indiana. The law of the place where made governs the interpretation and the validity of a contract. Oceanic Steam Nav. Co. v. Corcoran (C. C. A.) 9 F.(2d) 724, 730; Scudder v. Union Nat. Bank, 91 U. S. 406, 411, 23 L. Ed. 245. It is said in the latter case (page 411): "The law of the expected place of performance, should there be a difference, yields to the lex fori and the lex loci contractus." And in that case the rule is announced that matters bearing upon the execution, interpretation, and validity of a contract are determined by the law of the place where it is made. Matters connected with its performance are regulated by the law prevailing at the place of performance. Matters respecting the remedy depend upon the law of the place where the suit is brought.

By no stretch of the imagination is it possible to say that the contract was made in Ohio. The most that appears is that Langsenkamp attended the stockholders' meeting, and at Columbus let it be known that he was interested and was a prospective buyer of bonds; the discussions, conferences, and negotiations leading up to the actual sale, and the sale itself, at least in so far as the plaintiffs were able to consummate it, all took place prior to and on or about the 17th and 19th day of January, 1924, in the city of Indianapolis, Ind.

The $4,000 purchase was a cash and complete transaction. The $50,000 purchase was a completed transaction in so far as the plaintiffs were concerned. The engagement was entered into by them, the notes were executed by them, the collateral was agreed to by them and delivered in so far as delivery was possible, to McNamara, and he left Indianapolis and Indiana in possession of the documents that bound the plaintiffs to the contract of sale. True, there was no delivery of the $50,000 bonds; but that was not intended under the terms of the contract. The bonds were to go with the notes, and remain with the notes until their payment. It was not the intention of the parties at that time to enter into a conditional contract, subject to later ratification, but a completed contract, subject to being defeated only in case McNamara found it impossible to market the notes. The notes found their way to the Guarantee Trust Company, New York.

Could it be said with reason, on the theory that the contract was not complete until the payee was identified and the place of payment fixed, that the contract was made in the

state of New York, and that the law of New York governed its validity? Such logic is untenable. The contract was entered into in the state of Indiana. The defendants with great care preserved the record, and offered what they expected to prove. If the ruling of the court had permitted the acceptance of the evidence of what transpired after McNamara returned from Indianapolis, it could not have changed the conclusion that the contract was entered into in Indiana. McNamara discussed the situation with the president of the chemical company and the defendant Tomlinson, a director, chairman of the board of directors and financial manager of the defendant chemical company, and this resulted in Tomlinson and McNamara going to New York for the purpose of inducing the Guarantee Trust Company to accept the notes. This failed, and it was only subsequent to such failure that the arrangement was made that Tomlinson should take the notes and cancel the note for like amount of the chemical company, and substitute the $50,000 bonds held as collateral for the payment of the company's note to collateral for the payment of the Langsenkamp notes.

[4] Tomlinson cannot be considered as an innocent purchaser of the notes, nor can his want of knowledge of the provisions of the Indiana Blue Sky Law aid him as a defense. He is presumed to know the law as a director and an officer of the Broscalsa Chemical Company and intimately associated with its business, and as such is presumed to know of such an important item of business to that company as the intended sale of $500,000 worth of its bonds. What he was presumed to know, and undoubtedly did know, as an officer of the company, he cannot separate or divorce himself from as an individual under such circumstances, and place himself in the attitude of an innocent purchaser or innocent party. Further, the exception contained in the act of Indiana, pleaded in the answers of all the defendants, is not applicable to the transactions which took place under the issues in this case.

[5] The Blue Sky Law of the state of Indiana has never been tested as to its validity or constitutionality by the court of last resort of Indiana; yet its validity is not in any way questioned in this case, and it is conceded that its provisions were not complied with. The act fixes the public policy of the state of Indiana in respect to such contracts as we have in this case. And while, so far as anything appears herein, the contract was entered into in good faith on the part of both parties, still no logical reason is apparent that will prevent either party from avoiding the contract on the ground that it is against the public policy of the state where made, and void. This principle is announced by the Supreme Court of the United States in the case of Chattanooga National Building & Loan Association v. Denson, 189 U. S. 408, 23 S. Ct. 630, 47 L. Ed. 870; Munday v. Wisconsin Trust Co., 252 U. S. 499, 503, 40 S. Ct. 365, 64 L. Ed. 684. The courts as yet have not had occasion to apply this principle to the so-called blue sky laws very frequently; but, in so far as the question has been met, the principle has been sustained. People v. Augustine, 232 Mich. 29, 204 N. W. 747; Rhines v. Skinner Packing Co., 108 Neb. 105, 187 N. W. 874.

The sale to the plaintiffs is therefore set aside and held for naught, as prayed for in the bill of complaint, and an appropriate order may be submitted for that purpose. Plaintiffs to recover costs.