### FRANK v. ATWOOD.
### No. 5500.

Circuit Court of Appeals, Third Circuit.
Feb. 19, 1935.

Weil, Christy & Weil, of Pittsburgh, Pa. (A. Leo Weil and A. Leo Weil, Jr., both of Pittsburgh, Pa., of counsel), for appellant.

John G. Frazer and Reed, Smith, Shaw & McClay, all of Pittsburgh, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and THOMPSON, Circuit Judges.

WOOLLEY, Circuit Judge.

William K. Frank, L. B. Foster and S. E. Bramer, personal friends and associates, embarked in speculation. They obtained funds for the purpose through a joint note discounted by The Bank of Pittsburgh, N. A. Frank and Foster put up all the collateral. The loan was reduced from time to time until, early in 1931, the financial clouds having darkened, Frank and Foster desired to get off the joint note, which then stood at $199,942.93, and split the loan into three separate notes with individual makers, each note, of course, carrying collateral, to be supplied by each maker, satisfactory to the bank. Bramer was unable to furnish collateral against his personal note. Frank engaged to supply it. The bank, however, would agree to the new arrangement only if Frank would agree that the collateral which he would put up for Bramer's new note for $66,647.64 should be extended to an old note of Bramer for $17,993.11 then held by the bank with weak collateral. W. T. Davidson, vice president of the bank and the official through whom the bank was speaking, represented to Frank, who, being a director of the bank knew its policies, that this was necessary because both notes, aggregating $84,640.75, would be read jointly to the Board of Directors and they would not give up the security of the three-party joint note and discount Bramer's new individual note without also being fully protected on his old note. Frank acquiesced. And so the transaction went through, with Frank at the meeting of the Board of Directors.

The bank, in days that followed, failed. Frank, a little tardy, sued its receiver to recover 2000 shares of the stock of the National Steel Corporation which he had pledged as collateral security on the two Bramer notes. The action, by bill in equity, praying for injunctions, rescission of the contract of pledge and return of the shares pledged, was based on fraud by the bank official (its vice president) in persuading Frank, when presently willing to put up his shares as collateral on Bramer's proposed new note, to pledge them also as additional security on Bramer's old note, then "under-collateraled." The substance of the fraud was, as alleged, that the bank official falsely represented to Frank that the two notes when taken together, amounting to $84,640.75, would represent the total of Bramer's indebtedness to the bank, when, in truth, his indebtedness, with the new note discounted, greatly exceeded that amount. The learned trial judge, to whom the case was tried, observing the rule that to justify rescission of a contract for fraud or misrepresentation the evidence must be clear and convincing, Atlantic Delaine Co. v. James, 94 U. S. 207, 24 L. Ed. 112, United States v. Maxwell Land-Grant Co. (Maxwell Land-Grant Case), 121 U. S. 325, 7 S. Ct. 1015, 30 L. Ed. 949, Lalone v. United States, 164 U. S. 255, 17 S. Ct. 74, 41 L. Ed. 425, found that neither was fraud practiced upon Frank by the bank official nor were misrepresentations made by him in the transaction which eventuated in the agreement in respect to Frank's pledge of his shares as collateral for Bramer's two notes; and that no duty devolved upon the bank official to speak to Frank of other indebtedness of Bramer to the bank with which he and Frank were not then dealing. On these findings of fact the learned trial judge arrived at the conclusion that Frank was not entitled to equitable relief and accordingly dismissed the bill.

On appeal we fear that Frank has confused the evidence and, in consequence, has misconceived the issues of law. If the question involved were as he has stated and the evidence sustained it, clearly he should prevail. It is in these words:

"When a party proposes to pledge his stock as collateral for another's debt to the

bank amounting to $66,647.64 and is persuaded by the bank to pledge his stock for $17,993.11 additional upon representations by the Vice-President, that the total obligations to the bank of such third party amount to such sum, when they were actually in excess of $221,000—this constitutes a fraud such as warrants the party, misled to his damage, to rescind his pledge and have his collateral returned."

The trouble with this statement is that it is based on an assumption that fraud and misrepresentation as to Bramer's "total obligations" were established facts; when, viewed most favorably for Frank, the evidence as to misrepresentation by the bank official was at best conflicting. Really, the evidence, but for a letter written by the bank official, read alone and apart from the oral conversation of the parties, was scarcely conflicting; yet that letter made it possible to say that it was. In any event, the letter was open to two constructions; the one placed upon it by the learned trial judge, the trier of facts, in the light of the conversation of the parties, must be sustained unless it was a clear mistake and was without substantial evidence as to the circumstances to support it. Hazelwood Brewing Co. v. United States (C. C. A.) 3 F.(2d) 721, 722; Wald v. Longacre (C. C. A.) 34 F.(2d) 25, 27. We find no mistake and no lack of evidence. Though the action was founded on misrepresentation by the bank official and on an allegation that Frank relied, to his damage, upon the misrepresentation in pledging his shares as additional security for Bramer's old note, there was no evidence by Frank to support the allegation of his reliance thereon nor did he inquire of the bank official the total of Bramer's indebtedness to the bank. Manifestly they were talking and dealing with respect to the two Bramer notes alone and out of that conversation the contract in respect to them arose.

We find no error in the court's findings of fact, and none in its conclusion of law on the facts found.

Perhaps anticipating this decision, Frank next takes the position that, anyhow, it was the duty of the bank official not to limit his disclosure to the one old note of Bramer but to tell him voluntarily and gratuitously about Bramer's other indebtedness. We find ourselves in accord with the learned trial judge who could not see "that Davidson (the bank official) owed any duty of disclosure to Frank. They stood in no fiduciary capacity one to the other at the time Frank came to the bank and asked Davidson to split up the joint obligation into three." Moreover, Bramer's remaining obligations had no relation to or bearing upon those with respect to which the parties were dealing except, as Frank complains, that if he had known of the others he probably would not have supplied collateral for Bramer's old note, or for his new note. That was purely his affair, one upon which he could have informed himself by inquiry of the bank official or by looking into the books of the bank which were open to him as a director.

Finding no error in the trial, the decree of the court below dismissing the bill is affirmed.