THE ESTATE OF MRS. MATNEY DYER LUCEY, DECEASED, L. R. MUNGER, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 17810.    Promulgated December 20, 1949.

*Sam G. Winstead, Esq.*, for the petitioner.
*J. Frost Walker, Esq.*, and *Allen T. Akin, Esq.*, for the respondent.

**OPINION.**

DISNEY, *Judge*: (1) The first question for our consideration is whether the Commissioner erred by including in the gross value of the decedent's estate the amount of $142,971.01 representing one-half of the increase in the surplus account of the company attributable to ordinary earnings during the time the decedent was married to J. F. Lucey, as adjusted for the increase in the indebtedness of J. F. Lucey to the company.

We conclude from the respondent's brief that he would have us disregard the corporate entity of the Lucey Petroleum Co. and hold that the increase in the surplus account of the company during the marriage of J. F. Lucey and decedent constituted community property. He raises no question as to whether the corporate stock of the Lucey Petroleum Co. owned by J. F. Lucey at the date of his marriage to the decedent was his separate property and continued to be his separate property during coverture. The reason is apparent why the respondent raises no such question. *Scofield* v. *Weiss*, 131 Fed. (2d) 631, holds that under Texas law corporate stock which was separate property when issued retains its separate character, no matter how much it increases in value as a result of surplus. The same principle applies in

the instant case, for the corporate stock here in question was the separate property of J. F. Lucey on the date of his marriage to the decedent.

The respondent does not argue the applicability of section 811 (e) (2) of the Internal Revenue Code, as amended by section 402 of the Revenue Act of 1942, now repealed. Neither do we see any applicability.

The cases are numerous that hold that corporate entity should not be lightly disregarded. The fact that a corporation has only one stockholder does not control. *Burnett* v. *Commonwealth Improvement Co.*, 287 U. S. 415. *Higgins* v. *Smith*, 308 U. S. 473, announces the general rule that the Government may look at actualities and, upon determination that the form employed for doing business or carrying out the challenged tax event is unreal or a sham, may sustain or disregard the effect of the fiction as best serves the purpose of the statute. However, in applying this rule, we made the following statement in *Rhode Island Hospital Trust Co.*, 7 T. C. 211 at 216: "Disregard of a corporate entity under *Higgins* v. *Smith, supra,* is dependent upon a finding that it [the corporation] is but a fiction or a sham." We have found as a fact in the instant case that the Lucey Petroleum Co. was incorporated in 1924 and that J. F. Lucey was the sole stockholder of the company during the period June 20, 1936, to March 5, 1944. There can be no doubt there were legitimate business reasons for the organization and operation of the Lucey Petroleum Co., for it transacted an extensive business in oil and gas leases in which it had a total net income, as reported on its Federal income tax returns, during the period from June 20, 1936, to March 5, 1944, of $435,185.63. Though the corporation paid many of the family bills, they were charged to J. F. Lucey's account. In view of the extensive business operations of the Lucey Petroleum Co., and of all the other factors, we conclude that the corporate entity was real. There is, of course, always a measure of control exercised by a sole owner of a corporation over it, but there is not here that kind of domination and control which would warrant a disregard of the separate corporate existence of the Lucey Petroleum Co. We consider *W. T. Carter, Jr.*, 36 B. T. A. 853, and *Martin O'Connor*, 40 B. T. A. 489; affd., 110 Fed. (2d) 652, distinguishable from the instant case.

In our view, the Lucey Petroleum Co. was not a fiction or a sham. We, therefore, hold that the respondent erred by including in the gross value of the decedent's estate the amount of $142,971.01 representing one-half of the increase in the surplus account of the company attributable to the ordinary earnings during the time the decedent was married to J. F. Lucey.

(2) We next consider whether the Commissioner erred by increasing the gross value of the decedent's estate in the amount of $80,144.51,

the result of a sale to the Lucey Petroleum Co. by J. F. Lucey of a one-fourth working interest in certain leases.

There appears to be no controversy over the point of whether the one-fourth working interest in the leases constituted community property. Both parties appear to agree that the interest was community property. The leases here in question were purchased April 30, 1940, at a cost of $18,750 and were developed during coverture. The issue turns on the proposition as to whether J. F. Lucey in releasing the community's interest in the leases to the corporation for $112,255.97, rather than their fair market value of $272,545, effectively transferred decedent's community interest for purposes of her estate. The Commissioner in the determination of deficiency included her community interest in her gross estate. The petitioner has the burden of proving, *prima facie*, such inclusion to be error. The parties seem to agree that under the law of Texas the husband may transfer community property, provided that he does not work a fraud on his wife, and numerous cases from the courts of that state so hold. Apparently recognizing that it must prove that the conveyance by J. F. Lucey was not in fraud of his wife, the petitioner in the petition alleged that the sale to the Lucey Petroleum Co. was a bona fide transaction; that J. F. Lucey, in making the sale, acted in good faith, with no intent to defraud or otherwise affect the rights of the community; that the transactions occurred several years before the death of the decedent and that she at no time made any objection to the sale or indicated any disapproval thereof; and that the executors and heirs of decedent's estate have never offered any objection to the sale. These allegations were denied in the respondent's answer, and the respondent contends that, since petitioner has offered no proof in respect to such allegations, the issue, in so far as such allegations are concerned, stands as it was prior to the hearing. The petitioner on brief responds only that on the record we would be unwarranted in holding that the leases were assigned to defraud the wife, and that "it is fair to assume from the record as a whole that the assignments in question resulted from motives and considerations wholly unrelated to the question of the rights of the community estate vs. the separate estate of J. F. Lucey."

In our opinion, the petitioner on this issue has failed to meet its burden. The record merely shows the transfer. Under Texas law it was subject to revocation by the wife, for fraud. Right of revocation may lie in state law as well as provisions of the transfer. *Howard* v. *United States*, 125 Fed. (2d) 986; *Gaylord* v. *Commissioner*, 153 Fed. (2d) 408; *Estate of Felicie Gumbel Keiffer*, 44 B. T. A. 1265; *Commissioner* v. *Allen*, 108 Fed. (2d) 961. The petitioner has failed to prove that the transfer was not in fraud of the wife, as alleged by petitioner, therefore fails to demonstrate error by the Commissioner

in the inclusion of the wife's interest in her gross estate. As stated in petitioner's brief: "The record is silent as to the motives or purposes behind the conveyance of these leases to the Company. * * * As stated above, the record is devoid of any evidence that the assignment in 1940 was for the purpose of defrauding Mrs. Lucey. Indeed, it is fair to assume that had this been the case, some evidence would have been available in the form of action by her or her legal representatives asserting her rights." This only indicates, on the contrary, that evidence could have been procured that no action had been taken by the wife to set aside the conveyance by her husband. In so holding, we do not say that the respondent is revoking the transfer; rather, the right of revocation exists, and as far as we have been informed, by the evidence, there may now be a suit pending by the decedent's heirs or her creditors to set aside the purported transfer. The Texas statute makes the husband the manager of the estate and he, as manager, may transfer any or all of the estate except in fraud of his wife's interest. He may not, however, give away her community interest either to himself, *Rowlett* v. *Mitchell*, 114 S. W. 845, or to a stranger; *Smitheal* v. *Smith*, 31 S. W. 422; *Allen* v. *Brewster*, 172 S. W. (2d) 192; *Watson* v. *Harris*, 130 S. W. 237, or convert it. *Watkins* v. *Watkins*, 119 S. W. 145. The wife has "a present vested interest" in the community property, equal to her husband's, *Hopkins* v. *Bacon*, 282 U. S. 122; *Mercury Fire Ins. Co.* v. *Dunaway*, 74 S. W. (2d) 418. Obviously this right would be nullified if he could give it away, without consideration received in lieu thereof.

In *United States* v. *Rompel*, 326 U. S. 367, the Court says:

* * * While Texas does not have the statutory restrictions on gifts which are to be found in the Louisiana Civil Code, Texas does place some limitations on the husband's power to make gifts of community property. As we said of Texas community property in *Hopkins* v. *Bacon*, 282 U. S. 122, 126, the authorities hold "that if the husband, as agent of the community, acts in fraud of the wife's rights, she is not without remedy in the courts. (*Stramler* v. *Coe*, 15 Tex. 211; *Martin* v. *Moran*, 32 S. W. 904; *Watson* v. *Harris*, 130 S. W. 237; *Davis* v. *Davis*, 186 S. W. 775.)" Appellee also concedes that "excessive and capricious donations are void," and that malicious or fraudulent intent need not be established in order that the wife shall have the remedies referred to. Appellee does not question that these are the rules generally applicable to community property in Texas.

In *Charles I. Francis*, 8. T. C. 822, we said, as to Texas community property, that the lack of a wife's consent to transfer "preserves her right to question it as in fraud of her interest if there is a gift." It is held that the utmost good faith and frankness is required from the husband in dealing with the community estate, and that in case of a violation of the confidence and trust between the husband and wife as to community property a court of equity will afford relief. *Weir* v. *King*, 166 S. W. (2d) 187. He is in a restricted sense a trustee as to

community property. *Swearingen* v. *Swearingen*, 193 S. W. 442. Here the husband transferred the property to a corporation wholly owned and controlled by himself, but required cancellation of only about $112,000 of the indebtedness to the corporation, though the agreed value of the property was about $272,000. This effected a gift to the corporation of about $160,000 in property, one-half of which belonged to the wife. She could have set aside such a transfer. So far as shown by the record before us, the right so to do remained in her at the time of her death. Property acquired during marriage is presumed to be community, in the absence of "clear and satisfactory" evidence to the contrary, *Leinneweber* v. *George*, 95 S. W. (2d) 478; *Davis* v. *Duncan*, 102 S. W. (2d) 287; *Watkins* v. *Watkins, supra*, and the burden is on one contending that it is not community to prove otherwise. *Rippy* v. *Rippy*, 49 S. W. (2d) 494; *Hughes* v. *Robinson*, 214 S. W. 946. The petitioner here is in that position. Indeed the parties do not disagree that the property conveyed (seven leases acquired after marriage) was community property before conveyance. Clearly the petitioner had the burden of showing that the transferred property passed from the community estate, as to the wife's half interest. Though recognizing, by its allegations, such burden, the petitioner wholly fails to meet it, but instead asks us to rely upon presumption in its favor. Moreover, the burden is on petitioner to meet the presumption of correctness of the Commissioner's determination of deficiency. To hold with the petitioner on the point would be doubly to reverse the burden of proof. In the absence of any evidence except of the fact of conveyance, we hold that the Commissioner is not shown to have erred in including the wife's community interest in her estate, in the amount of $80,144.51. There is no evidence to indicate any other value for the right in the wife. We so hold, despite petitioner's further and alternative contention, in substance, that the entire amount of J. F. Lucey's debit balance on the books of the corporation, $272,056.89, should be subtracted from the fair market value of the property conveyed, and not merely the $112,255.97—so as to leave practically nothing includible in the wife's estate. The contention is covered by the last issue, next hereinafter discussed.

(3) The last question for our consideration is whether the Commissioner erred by failing to decrease the value of the community estate of the decedent in the amount of $46,937.41 representing one-half of the increase in the amount of the indebtedness of J. F. Lucey to the company during his marriage to the decedent (one-half of $93,874.82). The question was raised in the petition and denied by the respondent in his answer; it was argued by petitioner on brief, but no mention was made of it by respondent in his brief. It appears that the respondent has recognized the existence of the indebtedness of J. F.

Lucey to the company in that he argues on the first issue, heretofore considered, that the increase in the amount of the indebtedness of J. F. Lucey to the company during marriage may be used as a deduction in computing the amount he claims to be due to the community in determining the increase in the value of the surplus of the company. Again, in consideration of the second issue, involving the sale of the leases to the company, he recognized that it was proper to treat $112,-255.97, the amount charged for the leases, as a credit against J. F. Lucey's indebtedness to the company rather than treat the entire value of the leases as the measure of the community gain. In view of the respondent's argument on the first two issues, and the fact that he has not briefed this question, it is apparent that the Commissioner is convinced that he is in error on the present point. We have held that the corporate entity of the Lucey Petroleum Co. was real; that its stock was the separate property of J. F. Lucey at the date of his marriage to the decedent; and that it retained its separate character during coverture, no matter how much it increased in value as a result of surplus. Any claim to the surplus of the Lucey Petroleum Co. (as long as the surplus remains in the company) must be through the company's stock ownership and that stock is the separate property of J. F. Lucey. It follows that the community has no claim to the surplus of the company, and it is, therefore, not permissible to offset such indebtedness against the surplus. The indebtedness being one incurred during the marriage of J. F. Lucey and the decedent, the respondent erred in refusing to permit the deduction from the decedent's estate of one-half of its increase. Since we so hold, it follows that, the wife's estate getting the benefit of deduction of one-half of the increase during marriage of the community indebtedness to the corporation, the entire indebtedness to the company can not be deducted from the $272,545 value of the leases transferred by the husband, under the previous issue. To so hold would involve duplication of deductions.

Due to other adjustments in the deficiency notice, not raised by the pleadings,

*Decision will be entered under Rule 50.*

Reviewed by the Court.

VAN FOSSAN, *J.*, dissents.

---

JOHNSON, *J.*, dissenting: I am unable to agree with the majority's reasoning and conclusion on the second issue. In selling the community leases to the corporation for a price equal to cost, but less than fair market value, the husband acted within his powers as manager of the community estate under Texas law. I do not understand that the conveyance was set aside or ever questioned by his wife, although it was

made four years before her death in 1944, and it has not been challenged by her executor. Conceivably, it could be set aside if made in fraud of her interest, and because "petitioner has failed to prove that the transfer was not in fraud of the wife," the majority sustain the inclusion in her estate of one-half the excess of market value over the purchase price paid.

The petitioner rested under no such burden. As was said in *Budd* v. *Commissioner* (C. C. A., 3d Cir.), 43 Fed. (2d) 509, upon similar facts, petitioner proved "a sale, transfer of title, a valuable consideration, and the other positive elements upon which he relied," and the transaction must be recognized for tax purposes "unless the sale was a pretense and a fraud." But the Commissioner must:

* * * bear the burden of establishing this by clear proof, *Bamberger* v. *Schoolfield*, 160 U. S. 149; 16 S. Ct. 225, 40 L. Ed. 374; *Lalone* v. *United States*, 164 U. S. 255, 17 S. Ct. 74, 41 L. Ed. 425 * * *.

See also *Marshall* v. *Commissioner*, 57 Fed. (2d) 633, 634, and *Commissioner* v. *Neaves*, 81 Fed. (2d) 947, 949. He has not done so here.

The title to the leases was not in decedent at the time of her death, but was vested in the corporation and had been for four years. The fact that decedent might have had the right to sue to set aside the transfer for inadequate consideration, but did not do so, in my judgment does not authorize the Commissioner to include the difference in the value of the stocks as the property of decedent for estate tax purposes.

KERN, ARUNDELL, BLACK and LeMIRE, *JJ.*, agree with this dissent.