ALLEN v. BREWSTER et al.
No. 13365.

Court of Civil Appeals of Texas. Dallas.

May 21, 1943.

Rehearing Denied June 4, 1943.

Kennemer & Armstrong, of Dallas, for appellant.

Coke & Coke and Thos. G. Murnane, both of Dallas, for appellees.

LOONEY, Justice.

The Woodmen of the World Life Insurance Society, a fraternal benefit society,

organized under the laws of the State of Nebraska, and licensed to do business in Texas, under date of January 23, 1908, issued to Henry A. Brewster a benefit certificate, in which his wife, Mary Ann Brewster, was designated beneficiary. On January 21, 1929, the insured exchanged the original certificate for a Twenty-Payment Life Certificate, in the sum of $2,000, in which his wife, Mary Ann Brewster, was continued as beneficiary. Although the latter certificate was dated January 21, 1929, its effective date was January 1, 1925. Subsequent to these events, although never divorced, the insured left his home, abandoned and lived apart from his wife, and induced the Society to change the beneficiary from his wife to "Katherine Solari," designated as "friend"; and again, on August 5, 1940, induced the Society to change the beneficiary to "Patsy Allen," appellant herein, also designated as "friend." Henry A. Brewster died on December 14, 1941; the net death benefit under the certificate, at that time, was $2,071.03, claim for which was made by both Patsy Allen, "friend," and insured's legal wife, Mary Ann Brewster.

The Society admitted liability under the certificate, but, owing to rival claims, filed a bill of interpleader, making Patsy Allen and Mary Ann Brewster, individually and as administratrix of the estate of Henry A. Brewster, defendants. The court discharged the Society from liability and directed it to pay the death benefit into the registry of court. Subsequently, a trial was had as between the rival claimants on issues indicated by the points and counterpoints urged by the parties. Mary Ann Brewster recovered judgment, the court holding that Patsy Allen was not entitled to the benefit because she was without an insurable interest in the life of the insured; from which, she prosecuted this appeal.

Appellant contends (1) that she showed an insurable interest in the life of Henry A. Brewster, and (2), without regard to that matter, was entitled to recover because not required to have an insurable interest in his life. These questions will be discussed in the order named.

Henry A. Brewster and his wife Mary Ann were married at Texarkana in 1906, moved to Dallas in 1911 or 1912, in 1914 purchased the home owned at the time of his death, where they lived together until the fall of 1936, when Brewster left home and took a room at the Sanger Hotel in Dallas. It was after he left home that the changes of beneficiaries in the certificate took place. Mrs. Brewster was ignorant of the fact that her husband had named, or attempted to name, another beneficiary; the policy was never delivered to Patsy Allen, but was found by Mrs. Brewster among her husband's papers, after his death.

The rule is stated that, one claiming an insurable interest in the life of another must show either relationship to the insured by blood or affinity, the relation of debtor and creditor, or a reasonable expectation of pecuniary benefit or advantage from the continued life of the insured. This doctrine, with full citation of authorities, was announced by our Supreme Court in the case of Drane v. Jefferson, etc., Ins. Co., 139 Tex. 101, 161 S.W.2d 1057, 1058, 1059, as follows: "Those held to have an insurable interest in the life of another fall into three general classes: (1) one so closely related by blood or affinity that he wants the other to continue to live, irrespective of monetary considerations, 24 Tex.Jur., sec. 70; (2) a creditor, Livesay v. First Natl. Bank, Tex.Com.App., 57 S.W.2d 86, 91 A.L.R. 873; and (3) one having a reasonable expectation of pecuniary benefit or advantage from the continued life of another, Connecticut Mutual Life Ins. Co. v. Schaefer, 94 U.S. 457, 24 L.Ed. 251, quoted with approval in Equitable Life Assur. Co. v. Hazlewood, 75 Tex. 338, 12 S.W. 621, 7 L.R.A. 217, 16 Am.St.Rep. 893."

Patsy Allen, not being related to Henry A. Brewster either by blood or affinity, alleged as the basis for her claim of an insurable interest in his life: "That on or about December 1939 the said Henry A. Brewster requested this defendant to buy a home in the City of Dallas in order that he might occupy a room therein and have the advantages of a home, and that he continued to urge and request this defendant to buy such a home from said date and until May 1940, at which time she did actually buy a home and that the said Henry A. Brewster promised and agreed to occupy a room in such home as his living quarters and to take his meals in said home, and that he agreed to pay this defendant the sum of $50.00 per month for the use and occupancy of said home and the providing of meals to him, and that he did actually make such payments and did

actually occupy and enjoy said use of said home during his lifetime, and that he likewise agreed to protect this defendant in the obligation to be incurred by her in purchasing said home by the making of her beneficiary in the life insurance policy involved in this action and but for the aforementioned promises, inducements and representations, said property would not have been purchased by this defendant, and that at the time of the death of the said Henry A. Brewster, she was obligated on the purchase contract signed by her for said property to the approximate extent of $2000.00."

The evidence under the above pleadings showed that the friendship, out of which the change of beneficiary in favor of appellant was brought about, originated in October, 1933, when she and Brewster were introduced at a bowling alley, and this friendship seems to have ripened by their association there. At that time, the policy purportedly was payable to Katherine Solari. Appellant testified in regard to her association with Brewster at the bowling alley, and that Christmas, 1939, he took dinner at her home; seemed to enjoy it very much, and requested her to buy a place and let him move out so he could have a home; "said he was paying $50 a month for a room and that it would be cheaper for him to pay $50 for room and board than just for that room." It seems that Brewster continued to urge appellant to purchase a place, so, on March 28, 1940, she made the purchase and about April 1, she, Brewster and a Miss Eley occupied the house, each having a separate bedroom; and Brewster paid appellant $50 for the room and two meals per day until his death. Miss Eley, the young woman who lived with appellant, testified that she knew Brewster; in fact, introduced him to appellant at the bowling alley; that he was living at the Sanger Hotel at the time; heard him say he wanted a home and asked appellant to purchase a place; "she (appellant) said that she was afraid she couldn't take care of the place and that something might happen, and he told her if she would take the place he would see that she didn't lose it because he wanted a home; that was the discussion"; asked "Did he say anything in your presence about how much he was going to pay? A. I think in one discussion it was $50; I don't know but that is the transaction, he would give her $50 (meaning $50 per month)."

The above constitutes all the evidence offered by appellant in support of her contention that she had an insurable interest in the life of Henry A. Brewster.

■ Appellant contends that the court erred in holding that her claim on the insured had to be one enforceable in law or equity. In so far as appellant sought to base her claim of an insurable interest on the existence of the relationship of debtor and creditor, we do not think the court erred in holding that her claim as a creditor had to be one enforceable in law or in equity. The evidence, however, is wholly insufficient to establish the relation of debtor and creditor and fails to show that she had a reasonable expectation of pecuniary benefit or advantage from the continued life of the insured. The relation between appellant and the insured was of a very simple nature; one that exists between any landlady and her roomers, the arrangement being that, if she would purchase a place, he would room with her and pay $50 per month for board and lodging— simply a quid pro quo arrangement, which he performed as long as he lived and that ended at his death.

■ The contention is further made that Brewster had an insurable interest in his own life and could make a policy payable to whomsoever he pleased; in other words, implying that he could make her a beneficiary in face of the public policy of this State that forbids anyone becoming a beneficiary without an insurable interest. The doctrine announced in Wilke v. Finn, Tex.Com.App., 39 S.W.2d 836, by the Commission of Appeals, is a complete answer to this contention. It was held in that case that, although one has an insurable interest in his own life, he cannot make one without an insurable interest a beneficiary.

The only point urged by appellant worthy of serious consideration is that, as a beneficiary under a policy of life insurance issued by a fraternal benefit society, she was not required to have an insurable interest in the life of insured.

■■ The decision of this question involves the construction of the statute relating to fraternal benefit societies, mentioned below. Its pertinent provision, Vernon's Ann.Civ.St. Art. 4831, reads: "* * * any beneficial member may direct any benefit to be paid to such person or persons, entity, or interest as may be permitted by the laws of the society;

* * * and the member shall have full right to change his beneficiary, or beneficiaries, in accordance with the laws, rules and regulations of the society. * * * " The public policy of this State, as repeatedly announced by our courts, is that no one without an insurable interest can take under a policy on the life of another. In Price v. Knights of Honor, 68 Tex. 361, 4 S.W. 633, 636, the Supreme Court made the following statement: "It is of no importance that the rules of the Knights of Honor permitted benefit certificates to be transferred to persons having no insurable interest in the life of the member, and that it consented to the assignment made in this case. No action of the lodge could change public policy, or make a contract valid which the interests of society demanded should not be enforced. It certainly could make no agreement violative of law by which the rights of third parties could be injuriously affected." And in Cheeves v. Anders, 87 Tex. 287-291, 28 S.W. 274, 275, 47 Am.St.Rep. 107, the Supreme Court said: "Our court has placed the inhibition against such contracts upon the higher and sounder ground that the public, independent of the consent or concurrence of the parties, has an interest that no inducement shall be offered to one man to take the life of another. Making this the test in every phase of such cases, there can be no inconsistency in our decisions, and the public good will be better guarded." Any number of cases to the same effect could be cited. So, in view of the declared public policy of this State, we must assume that, in saying any beneficial member may direct benefits paid to such person or persons, entity, or interest as may be permitted by the laws of the society, the Legislature meant a person, interest, or entity having an insurable interest in the life of the member. To hold otherwise would be to permit the insured and insurer to ignore, in effect repeal, the wise public policy bottomed on the idea that, no inducement should be offered to one to take the life of another.

This rule of construction was applied by the Supreme Court in the recent case of McBride v. Clayton, 166 S.W.2d 125, holding that in enacting Art. 5048, giving to corporations an insurable interest in the life of officials or stockholders, the Legislature intended the term "insurable interest" to mean what the courts had theretofore said it meant; thus the court read into the statute the public policy as often declared by our courts. A life policy payable to one without an insurable interest in the life of the insured, whether issued by a fraternal benefit society or by a legal reserve life insurance company, presents the same temptation and offers the same inducement to take the life of the insured; hence no reason exists why a sound public policy should condemn one and condone the other.

The San Antonio Court of Civil Appeals recently announced a contrary doctrine in Castillo v. Canales, 169 S.W.2d 200, 202, involving the identical question, holding "that the laws of the State of Texas applicable to fraternal benefit societies do not prohibit a member of such a society from designating a beneficiary who does not have an insurable interest in the life of such a member." Although not decisive, yet strongly indicating that the Supreme Court will not approve that doctrine, a writ of error was recently granted on that point.

So, we conclude that the language of Art. 4831, providing that any beneficial member may direct any benefit to be paid to any such person or persons, entity, or interest as may be permitted by the laws of the society, cannot be construed as authorizing such society to permit a member to direct payment of benefits to any person, entity or interest without an insurable interest in the life of the member.

However, we do not think, on a proper construction of the bylaws of the Society, that authority can be found for the payment of benefit or withdrawal values to any person other than those permitted to become beneficiaries under the laws of the order. The Society was organized for benevolent purposes and not for the accumulation of profits; its benefits, as stated in its bylaws, are "for its members, their beneficiaries and dependents." Section 55-B of the bylaws, in our opinion, designates those persons who may become beneficiaries, beginning with wife, children, parents, other blood relations not farther removed than the fourth degree, certain named persons related by affinity, and dependents upon the member. While the relationship by affinity of some of the persons named is so tenuous as to suggest the probable absence of an insurable interest in the life of the member, yet it is significant that no one without an insurable interest, or probable insurable interest, is included in the list of permissible beneficiaries. So we conclude that the bylaw

(Sec. 3) providing for the payment of benefits to such designated beneficiaries as are not prohibited by the laws of the state in which the original certificate is delivered, refers to a permissible beneficiary, unless such person is prohibited by the law of the state where the certificate is delivered, hence a certificate delivered in this state could not include as beneficiary one wholly without an insurable interest.

In a supplemental pleading, appellee alleged that the policy in question having been acquired with community funds, the attempt of her husband to gratuitously bestow the proceeds of same upon Patsy Allen was a fraud upon appellee's rights.

The undisputed facts show that the original policy was issued in 1908, being the first insurance policy purchased after the marriage of appellee and Henry A. Brewster, and was paid for with community funds; that appellee did not consent to the attempted change of beneficiaries, in fact, had no knowledge of such attempt until after the death of her husband.

■ However, if it should be held, absent an insurable interest in his life, that Brewster had the legal right to make Patsy Allen beneficiary under the policy, we do not think the right of appellee to recover her community half of the property would be affected thereby. Although the husband is given authority to dispose of community property, he is not authorized by virtue of that power to make gifts of his wife's interest in the community estate to third persons, and the attempt of Brewster to do so in the instant case, in our opinion, was a fraud upon the rights of his wife. In the case of Martin v. Moran, 11 Tex.Civ. App. 509, 32 S.W. 904, 905, a well-considered case, the court held that, where the premiums of an insurance policy on the life of the husband, payable "as directed by will," are paid out of the community· estate, the wife, on the death of the husband, is entitled to one-half proceeds of the policy, though the husband's will made the entire proceeds payable to his own estate. In disposing of the case, the court, among other things, said: "It can

hardly be said that the husband, by virtue of the power given him to dispose of the community property, has the unlimited right to use it in buying insurance policies, and giving them to third parties. * * * It seems to us that for the husband to purchase insurance policies with community property, and make them payable as directed in his will, or to a third person, for the purpose of making them his separate property, would be a disposition in fraud of the rights of the wife, within the meaning of these decisions (decisions previously discussed)." Again, the court said: "The husband can give his interest in the community property to another, but he cannot give his wife's interest to himself." And in the case of Watson v. Harris, 61 Tex.Civ. App. 263, 130 S.W. 237, 241, the court said: "While it is true that the husband, when not acting in fraud of the rights of the wife, can sell or otherwise dispose of community property without her consent, he cannot, in fraud of her rights, give or donate her interest therein to a stranger. Pom.Eq.Jur., § 503; Martin v. Moran, 11 Tex.Civ.App. 509, 32 S.W. 904. It is so repugnant to our sense of justice that this court will never sanction the proposition that a husband may desert his lawful wife, and, while living in adultery with another woman, donate to the latter as a gift his wife's interest in the property owned by them in common, unless the Legislature enacts a law which will admit of no other construction." Similar holdings will be found by courts of other states having the community property system. See Occidental Life Ins. Co. v. Powers, by the Supreme Court of Wash., 192 Wash. 475, 74 P.2d 27, 114 A.L.R. 531, and note at page 545 containing a digest of the decisions of other states having the community system.

■■ So, we conclude that in no event could appellant recover more than half the proceeds of the policy in question; however, our decision is that she was not entitled to recover at all, because of the absence of an insurable interest in the life of the insured; therefore, the judgment of the court below is affirmed.

Affirmed.