ESTATE OF JAMES E. FRIZZELL, DECEASED, ROY BURNS, E. A. JACKSON AND MARY GEORGE FRIZZELL, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6704. Promulgated October 12, 1948.

*Joseph B. Brennan, Esq.,* for the petitioners.
*Bernard D. Hathcock, Esq.,* for the respondent.

SUPPLEMENTAL OPINION.

HARRON, *Judge*: *Issue 1.*—Consideration has been given to the contentions of the petitioners which are set forth in their motion for reconsideration under the first issue in this proceeding. Reconsideration of the record and of the pertinent authorities does not move us to set aside our previous finding of fact that the trust for William Pitts

Frizzell and the transfers of stock to that trust were made in contemplation of death, and our conclusion as to the question of law to the same effect.

Petitioners stress a short part of the testimony of Roy Burns to the effect that the decedent had sustained losses in six commodities transactions in 1937, shortly before he created the trust; and upon this evidence they argue that this proceeding comes within the *rationale* of *Colorado National Bank of Denver* v. *Commissioner*, 305 U. S. 23. We do not agree with this contention.

In the case of *Colorado National Bank of Denver*, the evidence clearly established that the decedent, Hendrie, intended to and did speculate on the market to a considerable degree, particularly during the last five or six years of his life, and that his dominant purpose in creating a trust for the benefit of his daughter and grandchildren was to remove his sound assets from the hazards of losses from his own speculations on the market, which he desired to and did continue up to the time of his death. See *Commissioner* v. *Colorado National Bank of Denver*, 95 Fed. 160, 162; reversed, 305 U. S. 23.

In this proceeding there is practically no evidence that the decedent, Frizzell, speculated on the market before or after the trust was created; or that the decedent believed that his business activities were attended by risks which might or could reduce his assets so that he deemed it prudent to isolate part of his assets from the hazards of losses, and thereby assure for his incompetent son means for his support at the time and for the rest of the son's life. At the time of death the decedent owned stocks and bonds of the value of about $425,000, exclusive of the stock given to the trust in 1937. There is no evidence that the decedent was a trader or speculator on the market in stocks in 1937 or thereafter, or that his business activities at that time were speculative or hazardous. The only evidence on this point is testimony of the witness Burns that in 1937 the decedent made six purchases on the commodities market which resulted in a net loss of about $5,700, which Burns learned about in 1938 from his preparation of the income tax return of the decedent for the year 1937. Burns had no knowledge otherwise of any market transactions of the decedent and he did not testify that the decedent speculated on the market. We can not make a finding from this fragment of evidence that the dominant purpose of the decedent in creating the trust in 1937 was to isolate part of his property from risk of losses from speculation, as was the basis for the holding in the *Colorado National Bank* case, *supra*, of the Board of Tax Appeals in its memorandum opinion that the Hendrie trust was not created in contemplation of death. (The memorandum opinion of the Board of Tax Appeals was entered on September 19, 1936, and is reported by Prentice-Hall in 1936 B. T. A. Memorandum

Decisions, vol. 5, par. 36,314, p. 442.)  Since this Court does not have before it substantial evidence to make such finding and conclusion in this proceeding, and does not so hold, this proceeding does not come within the *rationale* of the Supreme Court in *Colorado National Bank of Denver* v. *Commissioner, supra.*

We have reviewed again the testimony dealing with the motive of the decedent in creating the trust for the benefit of William Pitts Frizzell.  The testimony shows that the son was unable to look after himself in every respect; that is, he had to be under the care of guardians who would buy his clothes and look after him; he was unable to care for himself even though he were provided with an income.  Mary George Frizzell, a daughter of the decedent, testified about her deceased father's reasons for creating the trust as follows:

Well, he said that he wanted to fix this trust so that my brother would have something to live on under any circumstances that might happen.  *  *  *

Well, I guess maybe he thought that there might come a day when he might be left alone in the world; that we might all be taken.  *  *  *

Yes, I mean if something should happen to all of us because that is something you never know.  *  *  *

The beneficiary of the trust was 40 years old when the trust was created; the grantor was 81 years old.  The evidence does not show that the decedent intended by his creation of the trust in 1937 to relieve himself of the care of the son during the remainder of his (the decedent's) life, so as to make the son independent in that sense.

It is our judgment that the evidence shows that the dominant purpose of the decedent in creating the trust was to arrange for such time as the incompetent son might be alone.  Such provision could be made either by will or by an *inter vivos* trust.  In this proceeding the evidence shows, in our opinion, that the trust was created in 1937 in lieu of making the same provision under a will.  Therefore, the trust comes within the scope of section 811 (c) as a transfer in contemplation of death.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

BLACK, *J.*, dissenting: I realize, of course, that whether a transfer in trust such as we have in the instant case was made in contemplation of death is largely a question of fact.  The majority opinion, after finding certain facts, makes an ultimate finding of fact as follows:

The transfer in trust of 1,132 shares of Coca-Cola common stock on October 14, 1937, was made in contemplation of death.  The trust was established in contemplation of death.

I do not agree with this ultimate finding.  Upon the same facts upon which it is based, I would find as an ultimate fact:

The transfer in trust of 1,132 shares of Coca-Cola common stock on October 14, 1937, was not made in contemplation of death. The trust was not established in contemplation of death.

In these contemplation-of-death cases the important thing is to search for the dominating motive which prompted the transfer. If that dominating motive was associated with life rather than death, then the decision should be for the taxpayer; if associated with death, then the decision should be for the Government. In this case I think the evidence shows that the dominant motive which prompted the decedent to make the transfer was associated with life rather than death. I realize, of course, that each of these contemplation-of-death cases depends upon its own facts and that the study of other cases which have been decided by this Court and other courts, including the Supreme Court of the United States, is only relatively helpful. However, they do lay down certain principles which serve as guides in evaluating evidence. One of the cases which I think is helpful in evaluating the weight of the evidence in the case at bar is *Griffith* v. *United States*, 32 Fed. Supp. 884. In that case the Court of Claims said in the concluding part of its opinion:

The record in the case at bar discloses that paramount to all other considerations in the decedent's mind was the particular concern which he felt for his invalid daughter so far as the 1928 transfers are concerned; and the assurance of an adequate income for himself in later years so far as the 1929 transfers are concerned. These were the dominant motives which impelled the decedent to act, and any other considerations that might have occurred to him were purely incidental. Only by an inference altogether unwarranted under all the evidence of record could it be said that the decedent intended to effect a testamentary disposition, and to us it is clear from a consideration of all the evidence submitted that it cannot be said that the decedent in making transfers did so in contemplation of death. * * *

It seems to me that in the instant case the facts show that the dominant motive which impelled the decedent to make the transfer was concern for his mentally incompetent son and to provide safely for his support and maintenance, regardless of what might happen to decedent's own financial resources in the future, and that, as said by the court in the *Griffith* case, "any other considerations that might have occurred to him were purely incidental."

Our own recent case of *Estate of Ernest Hinds, Deceased*, 11 T. C. 314, seems to me to be in point in petitioner's favor. In that case General Hinds, a good many years before his death, had created a trust for the benefit of his wife, Minnie Hinds. Upon the request of his wife, he had made that trust revocable. In 1940 Mrs. Hinds suffered a serious accident, followed by a nervous breakdown, and General Hinds feared that she might remain an invalid the remainder of her life. In order to provide for her support and main-

tenance regardless of what might happen in the future to his own financial resources, he and Mrs. Hinds executed a new trust and made it irrevocable. The Commissioner determined that this latter trust was executed by General Hinds in contemplation of death. We held to the contrary, basing our holding upon the fact that the evidence showed that the dominant motive of General Hinds in making this transfer was associated with life, namely, the providing for the certain support of his wife, whom he feared might become a permanent invalid, with the assurance that this support would be available regardless of what might happen in the future to his own financial resources. In arriving at our decision in that case we quoted from the Supreme Court's decision in *Allen* v. *Trust Co. of Georgia*, 326 U. S. 630, in which the Court, among other things, said:

\* \* \* Many gifts, even to those who are the natural and appropriate objects of the donor's bounty, are motivated by "purposes associated with life, rather than with the distribution of property in anticipation of death." *United States* v. *Wells, supra* \* \* \*. Those motives cover a wide range. See 1 Paul, Federal Estate & Gift Taxation (1942) §§ 6.09 et seq. "There may be the desire to recognize special needs or exigencies or to discharge moral obligations. The gratification of such desires may be a more compelling motive than any thought of death." *United States* v. *Wells*, supra \* \* \*. Whether such a desire was the dominant, controlling or impelling motive is a question of fact in each case. \* \* \*

Because I believe that the evidence in this case shows that the dominating motive which impelled the decedent to make the transfer here involved was in recognition of the special needs of his mentally incompetent son, William Pitts Frizzell, and to discharge the moral obligation which decedent felt to insure his adequate support and maintenance in the future, regardless of what might happen to his own financial resources, I respectfully dissent from the majority opinion.

LEECH, *J.*, agrees with this dissent.