ESTATE OF ALBERT DUDLEY SAUNDERS, HELEN S. SAUNDERS AND DUDLEY A. SAUNDERS, EXECUTORS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 18811. Promulgated March 31, 1950.

*Emerson F. Davis, Esq.*, and *A. E. James, Esq.*, for the petitioner.
*Rigmor O. Carlson, Esq.*, for the respondent.

**538**

HILL, *Judge*: The principal question for our determination in this proceeding is what, if any, portion of the proceeds of five insurance policies taken out on decedent's life by his wife were includible in his gross estate under section 811 (g) (2) of the Internal Revenue Code,[1] as amended by section 404 (a) of the Revenue Act of 1942. Only the proportionate part of the proceeds represented by premiums paid after January 10, 1941, were included in decedent's estate by respondent, this portion being in the sum of $20,697.28 by virtue of section 404 (c) of the Revenue Act of 1942.[2] The parties agree that Helen Saunders applied for the policies, that she was named the beneficiary of each, and that decedent never had any incidents of ownership in the policies. Hence, the question resolves itself into whether all or any portion of the $8,757.85 expended for the payment of premiums on the five insurance policies between January 10, 1941, and September 18, 1945, the date of decedent's death, was paid directly or indirectly by decedent. It is clear that of this total amount, $7,587.45 was paid by checks drawn by Helen Saunders upon the joint checking account of decedent and herself between January 10, 1941, and July 5, 1945, $335.30 was paid from untraced sources in January, 1943, and $835.10 was paid after July 5, 1945, by checks drawn by Helen Saunders which were charged against the joint checking account of her daughter, Audrey Saunders, and herself.

Petitioner contends that, since Helen Saunders made two specific contributions of $3,745.56 and $2,500 to the joint checking account of her husband and herself, as well as numerous others of indeterminate amount, by reason of the fact that the funds of decedent and his wife were completely commingled in this account, because decedent never

---

[1] SEC. 811. GROSS ESTATE.

\*    \*    \*    \*    \*    \*    \*

(g) PROCEEDS OF LIFE INSURANCE.—

\*    \*    \*    \*    \*    \*    \*

(2) RECEIVABLE BY OTHER BENEFICIARIES.—To the extent of the amount receivable by all other beneficiaries as insurance under policies upon the life of the decedent (A) purchased with premiums, or other consideration, paid directly or indirectly by the decedent, in proportion that the amount so paid by the decedent bears to the total premiums paid for the insurance or (B) with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. For the purposes of clause (A) of this paragraph, if the decedent transferred, by assignment or otherwise, a policy of insurance. the amount paid directly or indirectly by the decedent shall be reduced by an amount which bears the same ratio to the amount paid directly or indirectly by the decedent as the consideration in money or money's worth received by the decedent for the transfer bears to the value of the policy at the time of the transfer. For the purposes of clause (B) of this paragraph, the term "incident of ownership" does not include a reversionary interest.

[2] SEC. 404. PROCEEDS OF LIFE INSURANCE.

\*    \*    \*    \*    \*    \*

(c) DECEDENTS TO WHICH AMENDMENTS APPLICABLE.—The amendments made by subsection (a) shall be applicable only to estates of decedents dying after the date of the enactment of this Act; but in determining the proportion of the premiums or other consideration paid directly or indirectly by the decedent (but not the total premiums paid) the amount so paid by the decedent on or before January 10, 1941, shall be excluded if at no time after such date the decedent possessed an incident of ownership in the policy.

designated any funds to be expended for insurance premiums, and from the fact that his wife was the owner of the policies and solely responsible for the payment of premiums, therefore, none of the premium payments from January 10, 1941, to September 18, 1945, were made directly or indirectly by decedent.

Respondent, on the other hand, states that decedent contributed practically all of the funds which went into the joint checking account he had with his wife and which also formed the opening balance in the subsequent joint checking account of Helen Saunders and Audrey Saunders. He further asserts that the identifiable contributions of decedent's wife to the joint checking account of her husband and herself can not be traced to the insurance premium payments. Under these circumstances, respondent claims that all the premium payments totaling $8,757.85 made between January 10, 1941, and September 18, 1945, were paid indirectly by decedent within the meaning of section 811 (g) (2) of the code, as amended.

We are convinced that decedent did not directly pay any of the premiums on the five insurance policies from January 10, 1941, until the time of his death, since all but one were met with checks drawn by Helen Saunders and there is no evidence that he made this one cash payment of a premium or furnished the money therefor.

Section 811 (g) (2) does not define what constitutes an indirect payment by a decedent. Regulations 105, section 81.27 (as amended by T. D. 5239, March 10, 1943), states that "the phrase 'paid indirectly by the decedent' is intended to be broad in scope." Authority for this interpretation of the statute is expressed in the House Report on the Revenue Act of 1942 (H. R. No. 2333, 77th Cong., 1st sess., 1942-2 C. B. 491) which states in part:

Payments of premiums or other consideration by the decedent include payments made by him directly or indirectly. This provision is intended to prevent avoidance of the estate tax and should be construed in accordance with this objective. * * *

Neither the examples given in the regulations nor in the House report cover the specific factual situation in the present proceeding. No case has been cited to us by the parties which deals with payment of insurance premiums by the wife of an insured decedent from their joint checking account in the light of section 811 (g) (2), as amended by the Revenue Act of 1942, and we have found none. However, in *Rule* v. *United States*, 63 Fed. Supp. 351, basically the same fact situation was considered under section 302 (g) of the Revenue Act of 1926.[3]

---

[3] SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

* * * * * * *

(g) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life.

The applicable Treasury regulation interpreting this statute (article 25, Regulations 80, as amended by T. D. 5032, 1 C. B. 427) provided, so far as here material, that:

\* \* \* Insurance receivable by beneficiaries other than the estate is considered to have been taken out by the decedent where he paid, either directly or indirectly, all the premiums or other consideration wherewith the insurance was acquired, whether or not he made the application. \* \* \*

Thus, the same question was posed in that case as in our own, namely, to what extent payments of premium from a joint bank account constitute indirect payments by the decedent. The court there stated:

\* \* \* If the insurance premiums were paid out of jointly-owned property [joint tenancy bank account], as we think they were, then the surviving widow can only be said to have taken them out to the extent to which she can prove that they were paid out of property originally owned by her; \* \* \*

Similarly, in the instant case, we think it must be held that the premiums paid on the insurance policies were indirectly paid by decedent, except where it is shown they were paid out of funds which were his wife's separate property prior to deposit in the joint checking account.

While it is true that Helen Saunders made all deposits to the joint checking account of decedent and herself and drew all the checks thereon which were in payment of the insurance premiums, yet the evidence shows that the account was almost exclusively made up of funds furnished by decedent, either by way of salary or bonuses he received. Petitioner makes no attempt to trace Helen Saunders' contribution of approximately $200 at the commencement of the joint checking account to the payment of insurance premiums. Petitioner does contend that premiums of $2,874.20 between September 10, 1943, and July 5, 1945, were paid from $3,745.56 which Helen Saunders contributed to the joint account of her husband and herself on September 10, 1943. We agree with petitioner that even though the senior interest in a mortgage which Helen Saunders bought in January, 1941, was purchased largely with funds which originated with decedent, still the $3,745.56 which she received when the mortgage was paid off was her separate property, for she was the sole owner of this interest in a mortgage. Yet petitioner has been unable to trace these funds which Helen Saunders deposited in the joint account specifically to any of the premiums paid thereafter. Petitioner does point out that prior to Helen Saunders' deposit on September 10, 1943, there was a balance of $1,672.72 in the joint account. Petitioner further notes that unidentified withdrawals exceeded unidentified deposits by $2,835.42 in this period, and that bonuses of decedent deposited in the account over these months were all expended for the purchase of United States bonds, with the exception of $204.44. But we can not agree that a reasonable construction of these facts is that $2,874.20 of the $3,745.56 deposited by decedent's wife was expended for insurance

premiums and that decedent contributed nothing to such payments from September 10, 1943, until July 5, 1945. In addition to the above mentioned deposit of $3,745.56 in the joint account by Helen Saunders, it appears that during this same period there were also deposits therein totaling $43,195.26, which we must assume, from lack of evidence to the contrary, were made from decedent's funds. We are not satisfied from the evidence presented that these deposits aggregating $43,195.26 were not the source of the insurance premium payments, and that Helen Saunders' deposit of September 10, 1943, was not expended for purposes other than insurance premiums. We think that petitioner has failed to prove that any part of the deposit of $3,745.56 was withdrawn for the payment of insurance premiums.

Petitioner also asserts that Helen Saunders contributed $2,500 of her separate property to the joint checking account of her husband and herself on July 2, 1945, and that $835.10 withdrawn for the payment of premiums thereafter was paid from this deposit. It is clear that decedent gave $2,500 to his wife for the purchase of a fur coat in September, 1943, and it was this sum which she deposited on July 2, 1945. Thus we conclude the $2,500 did not constitute a gift from him to enable her to pay future insurance premiums. The fact alone that premium payments are made by a wife out of property she received as a gift from her husband at an earlier time does not justify attributing the premium payments to him as an indirect payment. See *Estate of John E. Cain, Sr.*, 43 B. T. A. 1133. Thus the question becomes, to what extent is the $2,500 deposit of Helen Saunders traceable to the premium payments totaling $835.10 which were made thereafter.

There was a balance of $273.10 in the joint account of decedent and his wife on July 2, 1945, when she deposited the $2,500. No further deposits were made prior to July 5, 1945, when the account was closed. Withdrawals on and after July 2, 1945, totaled $360, leaving a balance of $2,413.10 when the joint account was terminated, which amount Helen Saunders transferred to the new joint checking account of her daughter and herself opened on the same day. Thus, even if we assume that the withdrawals of $360 were all made from the $2,500 Helen Saunders contributed, decedent's contribution to the new account available for the payment of premiums did not exceed $273.10. Insurance premiums totaling $835.10 were charged to the checking account of Helen and Audrey Saunders between July 5 and September 18, 1945. Thus we have found as a fact that a minimum of $562 of Helen Saunders' separate property is traceable to the payment of the last three premiums, and to that extent the premiums were not indirectly paid by decedent. In this analysis of the joint account of decedent's wife and daughter we have not considered the possibility of any additional deposits after the $2,413.10 on July 5. From the record it is clear that Audrey Saunders made no deposits during

the period under consideration. It is true the evidence does not show whether any additional deposits were made by Helen Saunders prior to payment of any of the last three premiums, and it is possible she may have deposited checks of her husband endorsed to her or cash he had given her. Even if we assume this, it would not disturb our finding that $562 of the total premium payments is traceable to Helen Saunders, since the proof is clear that decedent never gave her any funds for the purpose of paying premiums, and under the rationale of the *Cain* case, *supra*, the fact of such gifts to her and her application of them to the payment of premiums would not result in an indirect payment of a premium by decedent.

Therefore, we have found as a fact and now hold that decedent indirectly paid $8,195.85 of the $8,757.85 expended for premiums after January 10, 1941. We further hold that only that proportion of the proceeds of $55,540.91 from the five insurance policies which $8,195.85 bears to the total premiums paid since the commencement dates of the policies is includible in decedent's gross estate under section 811 (g) (2) of the code, as amended.

The amount of the deficiency in petitioner's estate tax, and, therefore, the amount by which petitioner overpaid the tax, must be determined by a Rule 50 computation. In this computation petitioner is entitled to credit for any New York State inheritance tax it has paid and to such further deduction for estimated attorney's fees in this proceeding as are shown to be necessary in addition to the $2,500 previously allowed by respondent.

*Decision will be entered under Rule 50.*