ESTATE OF E. A. SHOWERS, DECEASED, ELIZABETH MCEACHERN SCHERCK, THOMAS ELMORE MCEACHERN AND CHESTER WILLIAM SHOWERS, INDEPENDENT EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 22098. Promulgated May 23, 1950.

*George E. B. Peddy, Esq.*, for the petitioners.
*A. T. Akin, Esq.*, and *Joseph P. Crowe, Esq.*, for the respondent.

908

910

OPINION.

VAN FOSSAN, *Judge*: The first question to be determined is whether the Commissioner erred in increasing by the amount of $30,833.34 the value of $15,541.66 reported in the estate tax return of four insurance policies on the life of the decedent.

By section 404 (a) of the Revenue Act of 1942, effective October 21, 1942, section 811 (g) (2) of the Internal Revenue Code was amended to provide, in part, that proceeds of life insurance shall be included in the value of the gross estate of decedent receivable by all beneficiaries, other than the executor or administrator of decedent, to the extent of the amount receivable as insurance under policies upon the life of the decedent:

* * * (A) purchased with premiums, or other consideration, paid directly or indirectly by the decedent, in proportion that the amount so paid by the decedent bears to the total premiums paid for the insurance, * * *

\* \* \* \* \* \* \*

(4) COMMUNITY PROPERTY.—For the purposes of this subsection, premiums or other consideration paid with property held as community property by the insured and surviving spouse under the law of any State, Territory, or possession of the United States, or any foreign country, shall be considered to have been paid by the insured, except such part thereof as may be shown to have been received as compensation for personal services actually rendered by the surviving spouse or derived originally from such compensation or from separate property of the surviving spouse; * * *

In reference to the amendment, the House Committee and Senate Committee reports * state, in part, as follows:

The inclusion in the gross estate of proceeds which are payable to beneficiaries other than the executor is to be determined for the purposes of this section by criteria set forth therein. These criteria are (1) the payment of premiums or

---

*H. Rept. No. 2333, 75th Cong., 2d sess. (1942–2 C. B. 372, 490–1) and S. Rept. No. 1631, 75th Cong., 2d sess. (1942–2 C. B. 504,676–7).

other consideration by the decedent for the insurance, and (2) incidents of ownership possessed by the decedent at death. If either of these criteria is satisfied the proceeds are includible in the gross estate. The section provides with respect to the premium payments test that insurance purchased with premiums, or other consideration, paid directly or indirectly by the decedent, shall be included in the gross estate in proportion that the amount so paid by the decedent bears to the total premiums paid for the insurance.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Payments of premiums or other consideration by the decedent include payments made by him directly or indirectly. *This provision is intended to prevent avoidance of the estate tax and should be construed in accordance with this objective.* For example, if the decedent transfers funds to his wife so that she may purchase insurance on his life, and she purchases such insurance, the payments are considered to have been made by the decedent even though they are not directly traceable to the precise funds transferred by the decedent. [Emphasis supplied.]

The petitioners contend that the premiums which earned the $30,-833.34 of insurance sought to be included in the value of the gross estate of decedent were paid with the separate funds of the wife of decedent, who was the beneficiary and owner of the policies involved by virtue of an irrevocable assignment from the decedent, and were not paid directly or indirectly by the decedent.

The respondent contends that, where income of property transferred by a decedent to his wife is used to pay premiums on life insurance policies, the payments of the premiums are made indirectly by the decedent. He argues that the contention of petitioners is one based upon the refinements of title, and that the facts, viz, (a) the transfer by the decedent to his wife made ten days after the effective date of the 1942 Act, which transfer was the only transfer ever made to the wife by decedent; (b) the income from the property so transferred was used to pay the premiums and make gifts to the daughters of decedent and his wife; and (c) the checks in payment of the premiums were all signed by the decedent, are significant and prove that the premiums were indirectly paid by decedent.

The term "indirect" is defined in Webster's New International Dictionary (1943), in part, as follows:

Not direct; specif.: (a) Not straight or rectilinear; deviating from a direct line or course; circuitous; oblique; as, an indirect road. \* \* \* (b) Not straightforward; dishonest; tending to mislead. \* \* \* (c) Not leading to an aim or result by the plainest course or method or by obvious means; roundabout; as, an *indirect* accusation or answer; an *indirect* proof. (d) Not resulting directly from an act or course, but more or less remotely connected with, or growing out of it; as, *indirect* results.

The decedent on or before February 18, 1938, irrevocably assigned to his wife four insurance policies issued in prior years on his life. After such assignment the decedent continued to pay the premiums on such policies. Presumably, the premiums were paid with community

funds. It is stipulated that at the time of his death all property owned by decedent, except certain real estate in Hidalgo County, Texas, was community property of the decedent and his surviving wife. Whether rents or revenues were received from the Hidalgo County realty is not shown. However, under the Texas law, rents and revenues received from separate property during coverture become the community property of the husband and wife. *McFadden v. McFadden*, 213 S. W. (2d) 71; *Marshall v. Smith*, 199 S. W. (2d) 555; *Ragsdale v. Ragsdale*, 172 S. W. (2d) 381; affd., 179 S. W. (2d) 291. After the effective date of the Revenue Act of 1942 (October 21, 1942), the amount receivable as insurance was includible in the estate of decedent if the premiums were paid with community funds. On December 23, 1942, the decedent transferred to his wife his one-half community interest in certain interests in oil and gas leases which were a part of their community property. The income from such property was deposited in a separate bank account. It is reasonable to assume from the fact that the decedent continued to pay the premiums after the irrevocable assignment of the policies to his wife, and from the fact that he, in December, 1942, transferred property to her, together with the income therefrom, which thereafter constituted her separate property, that the wife theretofore had no separate funds from which to pay such premiums and that, there being no evidence to the contrary, the transfer was made to provide her with separate funds for that purpose.

In so far as the record discloses, the wife never exercised any control over the property given to her by the decedent or over the bank account in which the income therefrom was deposited. See art. 4614, Vernon's Civil Statutes of the State of Texas, Ann.[1] The fifteen checks drawn on such account to pay the premiums during 1943 to 1946, inclusive, were all signed by the decedent. There is no evidence showing that the wife ever signed any check drawn on the account. Expenses and taxes incurred in connection with the property were paid out of such account, as well as certain gifts to the daughters of decedent and his wife in 1943, 1944, and 1945. The remaining income was permitted to accumulate until in April and May, 1946, when certain purchases of securities were made. The record fails to show by whom such purchases were made or whether the securities were purchased in the name of the wife. By his right to issue checks against the bank account, the decedent retained and had control over

---

[1] ART. 4614. Wife's separate property.

* * * The wife shall have the sole management, control, and disposition of her separate property, both real and personal; provided however, the joinder of the husband in the manner now provided by law for conveyances of the separate real estate of the wife shall be necessary to the incumbrance or conveyance by the wife of her lands, and the joint signature of the husband and wife shall be necessary to a transfer of stocks and bonds belonging to her or of which she may be given control by this law.

the funds therein. He exercised that control to pay the premiums on the policies assigned by him to his wife.

Instead of continuing to pay the premiums out of community funds, the premiums were paid in 1943 to 1946, inclusive, from income derived from property transferred by the decedent to his wife. That the property transferred by decedent to his wife and the income therefrom became the separate property of the wife, as contended by the petitioners, is not determinative. The transfer by the decedent of property to enable his wife to pay the premiums, the use of the income from the property transferred for the payment of the premiums, and the right retained by the decedent to issue checks against the account, all indicate the adoption of a circuitous and roundabout method for the payment of the premiums, ostensibly out of the separate funds of his wife, but indirectly from property transferred to her by the decedent. Since the decedent furnished the wherewithal, he indirectly paid the premiums. See *Estate of Albert Dudley Saunders*, 14 T. C. 534.

In our opinion, under all the facts and circumstances, the premiums paid on the insurance policies involved in 1943 to 1946, inclusive, were "paid * * * indirectly by the decedent" within the purview of section 811 (g) (2) of the Internal Revenue Code as amended by section 404 (a) of the Revenue Act of 1942. The increase in value by the Commissioner of insurance includible in decedent's gross estate in the amount of $30,833.34 is therefore approved.

The next question to consider is whether the Commissioner erred in including in the value of decedent's gross estate the value of the trust corpora of five trusts as of the date of his death of $1,014,628.56. One trust was set up for the benefit of two daughters and four trusts for the benefit of the third daughter.

It is the Commissioner's position that, since the transfers of community property were made by the decedent and his surviving spouse under the laws of the State of Texas, the transfers must be considered as having been made by the decedent under section 402 (a) of the Revenue Act of 1942,[2] adding subsection (5) to section 811 (d) of the Internal Revenue Code, and, as decedent had the power to terminate the trusts at his election and deliver the trust estates to the beneficiaries,

---

[2] SEC. 402. COMMUNITY INTERESTS.

(a) * * *

* * * * * * *

(5) TRANSFERS OF COMMUNITY PROPERTY IN CONTEMPLATION OF DEATH, ETC.—For the purposes of this subsection and subsection (c), a transfer of property held as community property by the decedent and surviving spouse under the law of any State, Territory, or possession of the United States, or any foreign country, shall be considered to have been made by the decedent, except such part thereof as may be shown to have been received as compensation for personal services actually rendered by the surviving spouse or derived originally from such compensation or from separate property of the surviving spouse. [Repealed by section 351, Revenue Act of 1948, effective with respect to estates of decedents dying after December 31, 1947. Applicable here by reason of death in 1946.]

the transfers were revocable transfers and includible in decedent's gross estate under section 811 (d) (1) of the Internal Revenue Code.[3]

The petitioners concede that, under section 811 (d) (1) of the Internal Revenue Code, as construed by the Supreme Court in *Commissioner* v. *Holmes' Estate*, 326 U. S. 480, those specific properties transferred by the decedent and those properties acquired with cash given to the trusts by the decedent from his one-half of the community property, having a value at the time of the death of decedent of $134,047.91, are includible in the value of his gross estate.

The petitioners contend, however, that (1) the value at the date of decedent's death of the gifts made by the wife out of her one-half community interest and (2) the value at the date of decedent's death of the properties acquired by the several trusts with trust income and with borrowed funds later repaid from trust income ($746,532.74) are not includible in the value of the gross estate of decedent under section 811 (d) (1). It is argued that, since all the properties transferred to the several trusts consisted of community property, and since under the law of Texas the wife is clothed with the right and power to make valid gifts of her interest in community property, decedent could not make a gift of his wife's interest in such community property, citing *Allen* v. *Brewster*, 172 S. W. (2d) 192; hence, one-half of the gifts and transfers to the several trusts were made by the decedent and one-half by his wife. It is argued, further, that none of the properties, acquired by the several trusts with the income of the trusts were ever owned by the decedent; hence, none of them could have been transferred by him in the sense in which that term is expressed and set forth in section 811 (d) (1).

Under the law of Texas the wife has a present vested interest in the community property equal to that of her husband, but during coverture the husband has the exclusive power of control and disposition of the property as long as he discharges his obligation as head of the family. Absent fraud against the rights of his wife, he can dispose of the community funds as he sees fit. Vernon's Texas Ann. Civ. Stat., art. 4619, sec. 1; *Hopkins* v. *Bacon*, 282 U. S. 122; *United States* v. *Rompel*, 326 U. S. 367; *Herder* v. *Helvering*, 106 Fed. (2d) 153; certiorari denied, 308 U. S. 617; rehearing denied, 308 U. S. 639; *Magnolia Petroleum Co.* v. *Still*, 163 S. W. (2d) 268; *Ames* v. *Ames*,

---

[3] SEC. 811. GROSS ESTATE.

&ast;    &ast;    &ast;    &ast;    &ast;    &ast;    &ast;

(d) REVOCABLE TRANSFERS—

(1) TRANSFERS AFTER JUNE 22, 1936.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate or where any such power is relinquished in contemplation of decedent's death.

188 S. W. (2d) 689; *Arbuckle* v. *Arbuckle*, 214 S. W. (2d) 281; *Estate of Mrs. Matney Dyer Lucey*, 13 T. C. 1010, 1019; *Charles I. Francis*, 8 T. C. 822, 825–827, 829, 831. In *Arbuckle* v. *Arbuckle, supra*, the disposition of community property by the wife was held effective, but only because the evidence showed that the wife made disposition thereof as the husband's agent, with his full knowledge and consent. As stated in Paul's Federal Estate and Gift Taxation, ¶7.31, pp. 388–389:

* * * In theory husband and wife are equal co-owners of the community property during the continuance of the marital relationship. But the powers of management, control and disposition, which are the normal fruits of ownership under the common law, are concentrated in one spouse, the husband. Restrictions imposed upon the exercise of his powers are essentially negative in character and do not deprive him of his central position in the community.

*Allen* v. *Brewster, supra*, relied upon by petitioners to support their contention that the decedent could not make a gift of his wife's interest in the community property, is of doubtful authority. In that case a death benefit certificate on the husband's life was purchased with community funds and the wife was named as beneficiary. The husband, after abandoning his wife, and without her knowledge, induced the fraternal society which had issued the certificate to change the beneficiary and designate as beneficiary another woman, named Patsy Allen. After the death of the husband, both the widow of decedent, individually and as administratrix of his estate, and Patsy Allen asserted claims to the death benefit. Judgment for the widow of decedent rendered by the District Court was affirmed by the Court of Civil Appeals on the grounds (1) that the attempt of the husband to dispose of community property was a fraud upon the rights of his wife and (2) that Patsy Allen had no insurable interest in the life of decedent. However, the Supreme Court of Texas reversed the judgments of the lower courts and rendered judgment in favor of Patsy Allen for the proceeds of the certificate, holding that one named by insured as beneficiary in a death benefit certificate issued by a fraternal benefit society who had no insurable interest in insured's life could recover the proceeds of such certificate. *Allen* v. *Brewster*, 176 S. W. (2d) 311; rehearing denied Jan. 12, 1944.

Herein all the trust agreements were signed by the decedent and his wife. In the trust agreement for the benefit of Ann and Betty Showers. decedent and his wife each signed as grantor. The agreements creating the trusts designated as the Nancy Showers Trust Nos. 1 and 1–A were, according to statements therein, signed by the decedent as grantor and "pro forma" by his wife. The agreements creating the trusts designated as the Nancy Showers Trust Nos. 2 and 2–A were, according to statements therein, signed by decedent's wife as grantor and "pro forma" by the decedent. It was stipulated that under the

laws of Texas all of the property transferred to the five trusts was community property of decedent and his wife. Under the laws of Texas, all of such transfers could have been made by the husband alone. The signature of his wife merely evidences her knowledge and consent to the transfers of her share in the community property. She could not, therefore, claim that the gifts were made in fraud of her community rights, and, in so far as disclosed by the record, no such claim has been made by her. The form of the instrument of transfer or trust is not determinative. In substance and effect, all the transfers, whether "pro forma" or otherwise, were made by the decedent, in whom rested the exclusive power of control and disposition of the community property.

Section 811 (d) (5) expressly provides that, for the purposes of subsections (d) and (c), "a transfer of property held as community property by the decedent and surviving spouse * * * shall be considered to have been made by the decedent," with certain exceptions not here applicable. The transfers herein were transfers of property held as community property by the decedent and surviving spouse and under the statute "shall be considered to have been made by the decedent." Thus, section 811 (d) (5) reaches not only property of which the decedent has made a transfer, as contended by petitioners, but any "transfer of property held as community property by the decedent and surviving spouse," whether made by the husband or wife or both. Section 402 was enacted to eliminate special estate tax privileges enjoyed by virtue of the community property system. Senate Committee Report No. 1631, 77th Cong., 2d sess., 1942–2, C. B. 673–674; House Committee Report No. 2333, 77th Cong., 2d sess., 1942–2, C. B. 401, 402, 489; *Fernandez* v. *Wiener*, 326 U. S. 340. It must be construed so as to effectuate the purpose of Congress.

Since the enjoyment of the community property transferred was subject at the date of the death of decedent to his power at any time to terminate the trusts, the value thereof is includible in his gross estate under section 811 (d) (1). The fact that such right was exercisable by him as trustee is immaterial under the statute. *Commissioner* v. *Holmes' Estate, supra.*

Is the value, at time of decedent's death, of the trust properties acquired with income of the trust includible in decedent's gross estate?

The Supreme Court, in *Helvering* v. *Hallock*, 309 U. S. 106, in which gifts in trust under section 302 (c) of the Revenue Act of 1926 were involved, stated that "The taxable event is a transfer inter vivos. But the measure of the tax is the value of the transferred property at the time when death brings it into enjoyment." A valuation which included accumulations of income constituting a part of the trust corpus on the date of death was employed by the Commissioner in *Estate of Cyrus C. Yawkey*, 12 T. C. 1164. As to such valuation the

Tax Court decided in the Commissioner's favor "on authority of *Estate of Daniel Guggenheim*, 40 B. T. A. 181; modified and affirmed (C. C. A., 2d Cir.), 117 Fed. (2d) 469; certiorari denied, 314 U. S. 621; cf. *Commissioner* v. *Estate of Hager* (C. A., 3d Cir.) 173 Fed. (2d) 613; see also *Estate of Spiegel* v. *Commissioner, supra* [335 U. S. 701], where the accumulated trust income was likewise included in the estate, and that inclusion was approved." The Tax Court therein stated as follows:

* * * If decedent's retention and possession at his death of rights to designate the enjoyment of the income from the property were, as we have held, the statutory ground for inclusion, those rights extended as effectively to the income from the accumulated income as they did to the original principal. * * *

In *Edgar A. Igleheart, Executor*, 28 B. T. A. 888, it was held that, where the value of transfers made by a decedent during his lifetime is to be included in his gross estate for the purposes of the Federal estate tax, it is not unconstitutional to include in the gross estate the value of such property as at the date of the decedent's death, rather than as at the date of the transfers. The Circuit Court of Appeals, Fifth Circuit, affirmed the decision of the Board (77 Fed. (2d) 704), stating as follows:

* * * The thing taxed is the transmission of property from the dead to the living. For the purposes of the tax, property transferred by the decedent in contemplation of death is in the same category as it would have been if the transfer had not been made and the transferred property had continued to be owned by the decedent up to the time of his death. As to the property so transferred, as well as to property owned by the decedent at the time of his death, the measure of the tax is the value of that property at the time of the decedent's death. * * *

See also *Estate of Frank A. Vanderlip*, 3 T. C. 358, 362; affd., 155 Fed. (2d) 152; certiorari denied, 327 U. S. 728; and *Liebmann* v. *Hassett*, 148 Fed. (2d) 247.

*Burns* v. *Commissioner*, 177 Fed. (2d) 739, affirming 9 T. C. 979, and 11 T. C. 576, relied upon by petitioners, is distinguishable and not controlling herein. In that case, involving a gift in trust falling under section 811 (c) of the Internal Revenue Code, it was held that only the value of the Coca-Cola stock which the decedent transferred in trust during his life was includible in the gross estate, rather than the value of the entire trust corpus, as the Commissioner had determined. The decedent had made a complete *inter vivos* transfer of the stock to the trust and retained no interest in the corpus or income or any power to alter, amend, revoke, or terminate. The Tax Court in that case held that "where *transfer* of property has been completed during life and the death of the grantor does not operate upon the completion of the transfer, the estate tax is measured by the value of the property which the decedent transferred to a trust, only, and the tax is not measured by

other property in the trust when death occurs." The Tax Court further stated as follows:

The conclusion above reached is not in conflict with the holding in *Estate of Daniel Guggenheim*, 40 B. T. A. 181, 182, 183 (modified and affirmed, 117 Fed. (2d) 499; certiorari denied, 314 U. S. 621). In the *Guggenheim* case the entire trust corpus was included in the decedent's gross estate because of the reserved powers retained up to the time of his death, a different situation than we have here, where the decedent retained no interest in or control over the property which he transferred in trust.

*Humphrey's Estate* v. *Commissioner*, 162 Fed. (2d) 1; certiorari denied, 332 U. S. 817, also relied upon by petitioners, is also distinguishable and not controlling. In that case the decedent within two years prior to his death made a cash gift of $40,000 to his two sons, which sum they shortly afterwards used in a speculative venture, losing half of it. It was contended that $20,000, rather than $40,000 as determined by the Commissioner, should be included in the decedent's gross estate. The cash gift of $40,000, held to have been made in contemplation of death under section 811 (c) was, as in the *Burns* case, a completed *inter vivos* gift when made, with no strings held by the decedent attached to it.

In *Commissioner* v. *Holmes' Estate, supra*, the grantor reserved to himself during his lifetime the power to terminate any and all of the three several irrevocable trusts established by him on January 20, 1935, and to distribute the principal, with accumulated income, to the beneficiaries then entitled to receive it. He retained no power to revest in himself or his estate any portion of the corpus or income. The Supreme Court stated as follows:

It seems obvious that one who has the power to terminate contingencies upon which the right of enjoyment is staked, so as to make certain that a beneficiary will have it who may never come into it if the power is not exercised, has power which affects not only the time of enjoyment but also the person or persons who may enjoy the donation. More therefore is involved than mere acceleration of the time of enjoyment. The very right of enjoyment is affected, the difference dependent upon the grantor's power being between present substantial benefit and the mere prospect or possibility, even the probability, that one may have it at some uncertain future time or perhaps not at all. A donor who keeps so strong a hold over the actual and immediate enjoyment of what he puts beyond his own power to retake has not divested himself of that degree of control which § 811 (d) (2) requires in order to avoid the tax.

Herein, therefore, the transfers in trust were not completed *inter vivos* gifts or transfers. The decedent had the power at any time to terminate the trusts and to deliver the trust estates to the beneficiaries then entitled thereto. His right to terminate extended not only to the property originally transferred to the trusts, but also to the properties acquired with trust income.

Where death effectuates the enjoyment by the donees of *inter vivos*

transfers, the measure of the tax is the value of the trust estate at the time of death.

Furthermore, it is reasonable to assume that the wife knew of the provision in each of the trust agreements giving to her husband as trustee the right at any time to terminate the trust and deliver the trust estate to the beneficiary or beneficiaries then entitled thereto, regardless of age or condition in life of such beneficiary. By joining in the transfers the wife, by implication, granted to him such power over her interest in the community property. See *Estate of Charles M. Sheaffer*, 12 T. C. 1047. His power at any time to terminate the trusts extended not only to his own interest in the community property transferred, but also to the interest therein of the wife.

It is also argued by petitioners that the closing agreements executed in 1945 settled the question as to who made the specific gifts and that the Commissioner is now estopped to reopen and determine that question.

The closing agreements involved a controversy "as to whether certain gifts were made in 1932 to 1937, inclusive, or entirely in 1937." The gifts involved consisted of the setting aside out of community funds during 1932 through and including 1937 of cash in the aggregate amount of $33,594.45, which was used for the acquisition of a portion of certain mineral interests described in a trust instrument dated April 1, 1937, executed by taxpayer and spouse. It was agreed that *"for the purpose of settlement of the Federal gift tax liability* of the taxpayer that all gifts resulting from the above transactions were completed in 1937 and taxable for gift tax purposes during such year." (Emphasis supplied.) Presumably, as is usually done, the tax was computed under laws applicable to the year 1937. There is nothing in the agreements to indicate that in computing the gift tax liability of decedent or his wife the parties had in mind section 811 (d), relating to estate tax, as amended by section 402 (a), 1942 Act, or section 1000, relating to tax on gifts, as amended by section 453, 1942 Act. The agreements were merely a compromise of Federal gift tax liability and did not necessarily admit any particular fact or law. See *Export Leaf Tobacco Co.* v. *Commissioner*, 78 Fed. (2d) 163; also *B. D. Phillips*, 8 T. C. 1286; affd. per curiam, 178 Fed. (2d) 270.

It was such a situation as this undoubtedly, that Congress had in mind when it originally enacted what is now section 813 of the Internal Revenue Code, authorizing a credit of gift taxes against the estate tax where any property subject to the gift tax is required to be included in the donor's gross estate on his death. In *Smith* v. *Shaughnessy*, 318 U. S. 176, it is stated as follows:

\* \* \* As we said there [*Estate of Sanford* v. *Commissioner*, 308 U. S. 39], the gift and estate tax laws are closely related and the gift tax serves to supplement the estate tax. We said that the taxes are not "always mutually exclu-

sive", and called attention to § 322 of the 1924 Act, * * * there involved (re-enacted with amendments in § 801 of the 1932 Act, * * *) which charts the course for granting credits on estate taxes by reason of previous payment of gift taxes on the same property. The scope of that provision we need not now determine. It is sufficient to note here that Congress plainly pointed out that "some" of the "total gifts subject to gift taxes * * * may be included for estate tax purposes and some not." House Report No. 708, 72d Cong., 1st Sess., p. 45. [C. B. 1939-1, art. 2, p. 489.] Under the statute the gift tax amounts in some instances to a security, a form of down-payment on the estate tax which secures the eventual payment of the latter; * * *

In our opinion the fact that gift taxes were compromised and paid on some or all the property herein involved does not preclude the inclusion of the value of the same property in decedent's gross estate.

*Cramp Shipbuilding Co.*, 14 T. C. 33, is distinguishable. Therein the closing agreement, Form 906, provided that the taxpayer could take amortization deductions under section 124 of the Internal Revenue Code, as amended, provided all of the requirements of that section were satisfied. It was held that, since the taxpayer had complied in every respect with the provisions of section 124, and the deductions claimed by the taxpayer were correct in amount, the Commissioner erred in failing to allow them. The situation is very different here.

It is further contended by petitioners that retroactive application of section 811 (d) (5) will give rise to a tax which is arbitrary and capricious and which violates the due process clause of the Fifth Amendment to the Constitution of the United States.

A "tax is not necessarily and certainly arbitrary and therefore invalid because retroactively applied." *Milliken* v. *United States*, 285 U. S. 15. It was held in *Chickering* v. *Commissioner*, 118 Fed. (2d) 254; certiorari denied, 314 U. S. 636, that section 302 (d) of the Revenue Act of 1926 (corresponding to section 811 (d), I. R. C.) was not retroactive in any objectionable sense, the Court stating that, "While the trust was created in 1901, long before Congress had enacted an estate tax, the tax is an excise upon an event occurring subsequent to the enactment of the tax law." Herein, too, the tax is not imposed on the transfers made prior to the enactment of subsection (5), but upon an event occurring subsequent to the enactment of that section, i. e., the death of decedent, which was "the source of valuable assurance passing from the dead to the living." *Porter* v. *Commissioner*, 288 U. S. 436.

This question needs no extended discussion in view of *Fernandez* v. *Wiener*, *supra*, and *United States* v. *Rompel*, *supra*. In *Fernandez* v. *Wiener*, *supra*, it was claimed that section 811 (e) (2) of the Internal Revenue Code as amended by section 402 of the Revenue Act of 1942 and section 811 (g) (4) as amended by section 404 of the same act were invalid. In *United States* v. *Rompel*, *supra*, it was also claimed that section 811 (e) (2) as amended by section 402 of the Revenue Act of

1942 was invalid. In the latter case the Commissioner had levied an estate tax on the termination of a marital community by the death of the husband, a domiciled resident of Texas, the tax being measured by the value of the entire community property. After discussing the community property law of Texas, the Supreme Court stated that the death of either spouse of a Texas community effected sufficient alteration in the spouses' possession and enjoyment and reciprocal powers of control and disposition of the community property to warrant the imposition of an excise tax measured by the value of the entire community. For the reasons stated in the *Wiener* case, the Supreme Court concluded that the amendment of section 811 (e) (2) by section 402 of the Revenue Act of 1942 was not open to any of the constitutional objections raised. In the *Wiener* case the Supreme Court stated that the power of Congress to impose death taxes:

* * * extends to the creation, exercise, acquisition, or relinquishment of any power or legal privilege which is incident to the ownership of property, and when any of these is occasioned by death, it may as readily be the subject of the federal tax as the transfer of property at death. * * *

We find no basis for the contention that the tax is arbitrary and capricious because it taxes transfers at death and also the shifting at death of particular incidents of property. Congress is free to tax either or both, and here it has taxed both, as it may constitutionally do, in order to accomplish "the purposes and policy of taxation" to protect the revenue and avoid an unequal distribution of the tax burden. * * *

See also *Beavers* v. *Commissioner*, 165 Fed. (2d) 208; certiorari denied, 334 U. S. 811; *United States* v. *Jacobs*, 306 U. S. 363; *Chickering* v. *Commissioner, supra;* and *Charles I. Francis*, 8 T. C. 822.

It is our conclusion that section 811 (d) (5) does not violate the due process clause of the Fifth Amendment to the Constitution of the United States.

The inclusion of the value at date of death of the trust estates of $1,014,628.56 is approved.

In view of our conclusion it is not necessary for us to consider the further contention of respondent that the transfers are also includible in decedent's gross estate under section 811 (c) of the Internal Revenue Code.

*Decision will be entered under Rule 50.*